THE PEOPLE, for use, etc.

*v.*

JAMES W. HILL.

*Filed at Ottawa November 9, 1896.*

1. CONSTITUTIONAL LAW—*validity of act of 1874 for the support of pauper by relatives—due process of law.* The statute making a pauper's relatives, when able, liable for his support, (Rev. Stat. 1874, sec. 1, p. 754,) is not unconstitutional, as a deprivation of property without due process of law, as the legislature may change what is a moral duty into a legal liability, thus lessening a public burden.

2. SAME—*statute may fix upon what relatives liability for support of pauper shall rest.* Within what degrees of consanguinity a pauper's relatives shall be made liable for his support is largely a matter of legislative discretion, and an extension of the duty to brothers and sisters is not an unreasonable exercise of such discretion.

3. SAME—*validity of act of 1874 as affecting right of trial by jury.* The statute placing the primary duty of supporting a pauper upon his relatives, when able, is not unconstitutional, as violating the right of trial by jury.

4. PLEADING—*criminal—complaint under Pauper act need not aver demand.* Neither the pauper nor any one in his behalf need make a formal demand upon relatives for his support to fix their liability, before complaint can be made under section 3 of the Pauper act, (Rev. Stat. 1874, p. 754,) and no such demand need be averred.

5. SAME—*sufficiency of averment that person is a charge on the county.* An averment in an information filed under section 3 of the Pauper act, which charges failure to support a poor person "then and there being a pauper," sufficiently avers that such person is or will be a charge on the county.

6. COURTS —*court will take judicial notice of public statutes.* The court will take judicial notice of the fact that by public statute the duty of supporting the poor is imposed upon the counties of the State, except as otherwise provided by special or public law.

APPEAL from the Circuit Court of Peoria county; the Hon. N. E. WORTHINGTON, Judge, presiding.

RICHARD J. COONEY, State's Attorney, and FRANK J. QUINN, Assistant State's Attorney, for appellant:

The legislature may take away the right of trial by jury in civil cases if they please, provided they establish other just rules operating alike upon all. 1 Bishop on

New Crim. Proc. sec. 891; *Hallinger* v. *Davis*, 146 U. S. 314; *Missouri* v. *Lewis*, 101 id. 22; Cooley's Const. Lim. (6th ed.) 29, 30, 505.

"Due process of law" only confers a right of trial by jury where the right existed before the adoption of the constitution. *State* v. *McClear*, 11 Nev. 39.

If a class of cases were triable without a jury before the adoption of the constitution, a trial now without a jury would not be a violation of a constitutional right.

McCULLOCH & McCULLOCH, for appellee:

There are two grounds upon which we urge the unconstitutionality of the statute: First, the legislature has no power to impose upon a citizen a liability of this character; and second, the method employed deprives him of that due process of law to which he is entitled.

There was no remedy at the common law by which to compel persons, standing in the relation of lineal descendants even, except in the case of minors, to perform those duties which seem to be the dictates of the law of nature. The statute of 43 Elizabeth (chap. 2, sec. 7,) was enacted to remedy this defect in the common law, by imposing a penalty for a neglect of duty. It is to be noticed that its provisions extended only to those in the line of descent or ascent, and did not extend to brothers or sisters or any other kindred.

The statute of Elizabeth, and all statutes following it until the present one, were intended to protect the public from loss by a neglect of duty to support where a natural duty but no legal liability therefor existed. 2 Kent's Com. 191; *State* v. *Osawkee Township*, 14 Kan. 418.

The duty of supporting the poor being a public duty, it follows that it cannot be shifted to private shoulders. *Chicago* v. *O'Brien*, 111 Ill. 532.

Except in the case of parent and child, or one occupying the place of a parent, there is no common law liability for support. Reeves on Domestic Relations, 413;

*Wertz* v. *Blair County*, 66 Pa. St. 18; 1 Blackstone's Com. 448; *Edwards* v. *Davis*, 16 Johns. 285.

If it is sought to take private property for public use it must be with compensation, and if for private use it cannot be taken at all. Cooley's Const. Lim. 357; *Sholl* v. *Coal Co.* 118 Ill. 427; *Norman* v. *Heist*, 5 W. & S. 171; *Sadler* v. *Langham*, 34 Ala. 311; *Hepburn's case*, 3 Bland, 95; *Beekman* v. *Railroad Co.* 3 Paige, 45.

The statute in question authorizes the court to impose a continuing liability upon appellee during the pleasure of the court, to be enforced by attachment for contempt or by execution. It may operate as a perpetual violation of the constitutional limitations imposed upon the power of the legislature. *Millett* v. *People*, 117 Ill. 295; *Frorer* v. *People*, 141 id. 171; *Ramsey* v. *People*, 142 id. 50.

It does not come under the police power. *Millett* v. *People*, 117 Ill. 295; *State* v. *Osawkee Township*, 14 Kan. 418.

Mr. JUSTICE BAKER delivered the opinion of the court:

This is a complaint or information filed in the county court of Peoria county, under section 3 of the Paupers act, (Rev. Stat. chap. 107,) by the State's attorney of said county, in the name and by the authority of the People of the State of Illinois, for the use of Peoria county, against James W. Hill, the appellee, to compel him to contribute to the support of his sister, Charlotte Grannis, an unmarried woman, she then and there being a pauper, and wholly without means, and unable to earn a livelihood for herself in consequence of bodily and physical infirmities. In the county court a motion to quash the complaint and dismiss the cause was overruled, and on a hearing it ordered, adjudged and decreed that said Hill should, on a certain specified day, pay the sum of $7.50 for the use of Peoria county for the support of said Grannis, and should pay the further sum of $7.50 on the first Monday of each and every month thereafter, for the use of Peoria county, for the support of said Grannis,

until the further order of the court in the premises. Upon an appeal by Hill to the Peoria circuit court he renewed his motion to quash the complaint, which was sustained, and judgment entered quashing the same. From such judgment this further appeal was then taken.

The principal objections urged by appellee to the case made by the complaint challenge the constitutionality of section 1 of the statute in relation to paupers, which provides that every poor person who shall be unable to earn a livelihood in consequence of any bodily infirmity, idiocy, lunacy or other unavoidable cause, and provided the pauperism is not caused by intemperance or other bad conduct, shall be supported by the father, grandfather, mother, grandmother, children, grandchildren, brothers or sisters of such poor person, if they, or either of them, be of sufficient ability; and also the constitutionality of the following sections, which give a remedy for the enforcement of such liability without making provision for a jury trial. He questions the power of the legislature to compel a man, in any event, to support his indigent brothers or sisters, and urges the unconstitutionality of the statute on these two grounds: First, that the legislature has no power to impose upon a citizen a liability of this character; and second, that the method prescribed by the statute for its enforcement deprives him of that due process of law to which he is entitled.

The duty of parents to provide for the maintenance of their children is a principle of natural law; but the common law does not, like the civil law, fully enforce this mere moral obligation, but simply goes to the extent of requiring parents to support their offspring until they attain the age of maturity. Nor does any common law obligation impose upon a child the legal duty of maintaining an infirm, aged or destitute parent. (*Edwards* v. *Davis*, 16 Johns. 181; *Stone* v. *Stone*, 32 Conn. 142; *Dawson* v. *Dawson*, 12 Iowa, 512.) To remedy these and similar defects in the common law the statute of 43 Elizabeth,

chap. 2, sec. 7, was passed. It enacted that the father and grandfather, and the mother and grandmother, and the children of every poor, old, blind, lame and impotent person, or other poor person not able to work, being of a sufficient ability, shall, at their own charges, relieve and maintain every such poor person, etc. Similar statutes have been enacted in many of the States of the Union. The statute of this State upon which the present proceeding is based, to some extent changes the remedy from that afforded by the English statute, and includes grandchildren, brothers and sisters within the list of those who shall be liable for the support of a poor person.

It is to be noted that the English statute did not extend liability beyond the line of lineal consanguinity, but extended it in the lines of both descent and ascent, whereas our statute also extends it to brothers and sisters, who are collateral kindred, related to each other in the first degree. It is urged that our statute is a plain attempt on the part of our legislature to impose upon one person a legal liability for the support of another where no such legal duty or liability existed at common law, and is taking one man's property for the use of another without the owner's consent. But, as we have seen, there was no perfect common law duty requiring even the parents to maintain their children beyond the period of their minority. In cases of poverty and inability to earn a livelihood the duty of such parents to support their children after the age of maturity, the duty of grandparents to maintain their grandchildren, and of children to supply the necessaries of life to their parents, were all mere moral and imperfect duties that the common law did not recognize and enforce. It can hardly be said that there is no moral duty whatever imposed upon a man who has sufficient financial ability, consistently with his duty to himself and to others, to supply the necessaries of life to a brother or sister who is unable to earn a livelihood in consequence of bodily infirmity,

idiocy, lunacy or other unavoidable cause, in cases where such brother or sister did not become a pauper from intemperance or other bad conduct. This being so, our statute stands upon the same footing, so far as legal principle is involved, that the statute of Elizabeth stands upon. The support of the poor is a public duty, and in case of the default of him upon whom is imposed a prior duty to afford such support, the cost of providing the same will be upon the body politic. The object of both the statute of Elizabeth and of our existing statute is to protect the public from loss occasioned by neglect of a moral or natural duty imposed on individuals, and to do this by transforming the imperfect moral duty into a statutory and legal liability. And the right of the legislative department of government to change an imperfect duty into a perfect duty, or even to create by statute a new legal liability, has been recognized from time immemorial.

The legislature of this State can do any legislative act that is not prohibited by the State or Federal constitution, and, without and beyond the limitations and restrictions contained in those instruments, the law-making power of the State is as absolute, omnipotent and uncontrollable as that of the English parliament. (*Mason* v. *Wait,* 4 Scam. 127; *People* v. *Hoffman,* 116 Ill. 587; *Chicago and St. Louis Railroad Co.* v. *Warrington,* 92 id. 157; *Richards* v. *Raymond,* id. 612; *People* v. *Wall,* 88 id. 75; *Hawthorn* v. *People,* 109 id. 302.) In *Firemen's Benevolent Ass.* v. *Lounsbury,* 21 Ill. 511, it is said that the legislative power, except wherein it is limited or restrained by constitutional provision, confers all legislative power, and authorizes the law makers to pass any laws and do any acts which are embraced in the broad and general word *legislation;* and that, with the exception noted, it authorizes the passage of any law which could be enacted in the most despotic government or which the people could enact in their primary capacity. And in *Munn* v. *People,*

69 Ill. 80, it is said (p. 88): "Every subject within the domain of legislation and within the scope of civil government not withdrawn from it by the constitution of the State or of the United States, can be dealt with by the General Assembly by general laws to affect the whole State and all the people within it."

Although the duty of supporting the poor is a public duty, yet it is not a purely public burden, and the systems of poor laws that prevail in England and in this State had their origin in the statute of 43 Elizabeth, chap. 2, and that statute was based upon these principles: that the primary duty of affording support to a poor and helpless person rested on those upon whom, because of consanguinity, was imposed a natural and moral, though imperfect, duty to relieve and maintain, and that so long as such primary duty existed and could be enforced the public should be exonerated from the burden. Within what degrees of consanguinity the primary liability shall be upon the relatives of the pauper, instead of upon the public, is largely a matter for legislative determination. Here the statute, which includes collateral relatives of the first degree, brothers and sisters, does not extend to such distant collateral relatives as that the courts could pronounce it unreasonable and void; and the statute operates generally and equally upon all persons within the State who fall within the relations and circumstances provided for therein.

The other objection made to the validity of the statute is, that the method of procedure is not according to the law of the land. The legal liability imposed is statutory, and the statute fixes the procedure by means of which the liability is to be enforced. The complaint is to be filed in the county court, either by the State's attorney of the county or by the overseer of the poor of the town or precinct where the poor person resides. At least ten days' notice is to be given the defendant, by summons, requiring him to appear and answer the complaint.

The court is to proceed in a summary way to hear the proofs and allegations of the parties, without further written pleadings. If the court is satisfied, from the allegations and proofs, that the defendant is not complying with the statutory requirements, and of his pecuniary ability, then it is to give judgment in the case, and make any and all necessary orders for the payment, weekly, to the overseer of the poor of the town or precinct or to such other person as it shall direct, of such sum, or the defendant's proper contributory share of such sum, to be applied to the support of such poor person, as in the opinion of the court is necessary to properly support such poor person, taking in view the ability of the defendant to furnish such support. The court is authorized to make orders for contributions as between relatives, and orders for partial support. The court may make orders specifying the times during which the payments are to be made, or may leave the time indefinite and until the further order of the court. The orders may, from time to time, on application, be changed, and payments as they fall due may be enforced by attachment or by execution. The court, at the hearing, may discharge any defendant that may appear not to be liable for such support or who is contributing his fair share therefor. If judgment is against the defendant he may be adjudged to pay the costs, or the costs may be apportioned according to the right of the case, but if the application is dismissed it shall be at the costs of the county or town on whose behalf the application is made. This procedure may not be in strict conformity with that provided by the English statute or that provided in some other States, but it is not necessarily invalid on that account. It is a statutory liability, and there is no reason why the procedure for its enforcement cannot be provided for in the statute fixing the liability. We are unable to see that the method of procedure adopted violates any constitutional right of appellee. It is suggested that it deprives

him of the right of trial by jury. It is only the right of
trial by jury "as heretofore enjoyed" that section 5 of
article 2 of the constitution provides "shall remain invio-
late." This section was not intended to confer the right
of jury trial in any class of cases where it had not pre-
viously existed, nor was it intended to introduce it into
special summary jurisdictions unknown to the common
law and which do not provide for that mode of trial.
*Ward* v. *Farwell,* 97 Ill. 593; Cooley's Const. Lim. (6th ed.)
504, and authorities cited in note 2.

Our conclusion is, that there is no merit in either or
any of the grounds urged against the constitutionality
or validity of the statute.

It is claimed that the complaint is defective in vari-
ous particulars. The statute does not require that a
demand for support should be made before complaint is
filed. It nowhere imposes upon either the poor person
or any official the duty of making such prior demand.
It makes it the duty of the State's attorney or overseer
of the poor to make the complaint "upon any failure of
any such relative or relatives to support such poor per-
son as provided by this act," and the complaint expressly
charges "that the said James W. Hill has unlawfully
failed and neglected to provide for his said sister, the
said Grannis, according to the form of the statute in such
case made and provided." It is true that in section 2, in
designating the relative order in which the relatives of
the poor person shall be, consecutively and respectively,
liable for the support of such poor person, the expres-
sions, "shall first be called on," "shall be next called on,"
"shall next be called on," and "and next," are used; but
these expressions are manifestly used merely and only
for the purpose of designating the order in which liability
shall attach to relatives of different degrees of consan-
guinity.

It is urged that it does not appear from the complaint
whether the poor are supported by the county or by the

township. The proceeding is prosecuted for the use of Peoria county. The court will take judicial notice of the public statutes of the State, and that in all of the counties of the State, whether under township organization or not, the duty of supporting paupers is imposed upon the county, except in a few counties, such as Stephenson, Kendall and DeKalb, where, by special but public law, the duty of support is imposed upon the towns. Public Laws of 1861, p. 205; Public Laws of 1863, p. 46; Rev. Stat. chap. 107, secs. 14, 15, 34, 35; *Town of Freeport* v. *Board of Supervisors*, 41 Ill. 495; *Town of Fox* v. *Town of Kendall*, 97 id. 72.

It is finally urged that it nowhere appears that the poor person is, or is likely to become, a charge upon Peoria county. The complaint does state that James W. Hill, "on the first day of May, 1894, at and within the county of Peoria in the State of Illinois, and on divers other days and times, as well before as after that day, he then and there being of sufficient ability to do so, did unlawfully fail to support his sister, Charlotte Grannis, she, the said Charlotte Grannis, *then and there being a pauper,*" etc. This is not so specific a statement of residence as good pleading would require, but we are inclined to regard it as substantially sufficient upon the motion to quash, and especially in view of the fact that this ground of objection was not specified with the numerous others that were incorporated in the motion to quash, and seems to have been made for the first time upon the filing of appellee's brief and argument in this court, upon the appeal.

For the reasons herein stated the judgment of the circuit court quashing the complaint and dismissing the proceeding is reversed, and the cause is remanded to that court for further proceedings in conformity with the views herein expressed.

*Reversed and remanded.*