No. 23,620.

THE STATE OF KANSAS, *Appellee*, v. JOHN BATEMAN, *Appellant*.

SYLLABUS BY THE COURT.

1. CONSTITUTIONAL LAW—*An Act Providing for the Care and Keeping of Insane Persons by Certain Relatives—Provision Within the Title of the Act.* The title of chapter 247, Laws of 1907, which reads: "An act concerning lunatics, insane persons, idiots, imbeciles, distracted persons, feeble-minded persons, drug habitues, and habitual drunkards," etc., is broad enough to include a provision creating a liability upon certain relatives of a lunatic or upon their estates for the cost of his care and keeping.

2. SAME—*Act Not in Conflict With Fourteenth Amendment of the Federal Constitution.* The act is not in conflict with section 1 of the fourteenth amendment to the constitution of the United States, although there is no provision in the act for notice to relatives of a person charged with being a lunatic of the time and place of the hearing of the lunacy proceedings in the probate court.

3. SAME—*Act Does Not Violate the State Constitution.* It does not violate section 1 of article 11 of the state constitution which requires the legislature to provide a uniform and equal rate of assessment and taxation.

4. INSANE PERSONS—*Liability of Father for Maintenance and Care of an Insane Adult Son.* Under section 33 of the act which reads: "The following relatives shall be bound by law to provide for and support the persons referred to in sections 31 and 32 of this act: The husband for the wife and

the wife for the husband, the parent for his or her children, and the children for their parents," it is held that the state may maintain an action against the father of an insane son who has been committed to the state hospital, to recover the *per capita* cost of his maintenance and care, after the son has reached the age of twenty-one years.

5. SAME—*Statute an Innovation on the Common-law Liability of Relatives.* The statute is an innovation on the common-law liability of relatives, and recognizes the moral obligation resting upon the parent to provide for an adult insane child, and makes of that imperfect obligation a legal one.

Appeal from Pottawatomie district court; ROBERT C. HEIZER, judge. Opinion filed February 11, 1922. Affirmed.

*Chester A. Leinbach,* of Onaga, for the appellant.

*Richard J. Hopkins,* attorney-general, *J. K. Rankin,* assistant attorney-general, and *E. C. Brookens,* county attorney, for the appellee.

The opinion of the court was delivered by

PORTER, J.: Vernon L. Bateman, son of the appellant, was adjudged insane and committed to the state hospital in 1912. He was a minor and the appellant paid to the state for his maintenance and care until January 6, 1914, when the son became twenty-one years of age. The state brought this action to recover the *per capita* cost of the maintenance, care and treatment of the son from the time he became of age until his death, which was in June, 1918. The state prevailed, and hence this appeal.

The statute provides that in all cases of insane persons admitted to the state hospitals "the state may recover the per capita cost of the maintenance, care and treatment of the inmates . . . and clothing and funeral expenses from the estate of such person or from any person who by law is bound to provide for and support such person." (Laws 1907, ch. 247, § 32, Gen. Stat. 1915, § 6129.) Section 33 reads:

"The following relatives shall be bound by law to provide for and support the persons referred to in sections 31 and 32 of this act: The husband for the wife and the wife for the husband, the parent for his or her children, and the children for their parents."

The title of the act is:

"An act concerning lunatics, insane persons, idiots, imbeciles, distracted persons, feeble-minded persons, drug habitues, and habitual drunkards, and repealing article 1 of chapter 60 of the General Statutes of 1901, and chapter 4, 299 and 300 of the Session Laws of 1905."

The first contention is that the title is not broad enough to include a provision creating a liability upon the relatives of the lunatic or upon their estates for his care and keeping. There is no conflict with

section 16 of article 2 of the constitution. The act forms one general comprehensive subject. (*The State v. Barrett,* 27 Kan. 213; *The State, ex rel., v. Akers,* 92 Kan. 169, 210, 140 Pac. 637.)

It is claimed that the statute is in conflict with section 1 of the fourteenth amendment to the constitution of the United States in that it takes property without due process of law, because under the procedure in cases of lunacy there is no provision for any notice to the relative of the time and place of the hearing, and because the judgment in the probate court creates under the statute a liability upon relatives who are not within the court's jurisdiction. The argument is not sound. The question whether appellant is liable or not is one to be determined in the present action, of which he had notice and in which he appeared and contested the claim of the state.

It is contended that, as construed by the trial court, the statute violates section 1 of article 11 of the constitution of the state which requires the legislature to provide for a uniform and equal rate of assessment and taxation. In *Kaiser v. State,* 80 Kan. 364, 102 Pac. 454, an action was brought by the state to recover from the estate of the lunatic, and it was held that the statute was not in conflict with this section of the constitution, and did not impose double taxation upon the lunatic or upon his estate. In that case it was said:

"We see no inequality, in any such sense as to involve a violation of this requirement, in compelling a citizen to contribute his proportionate share as a taxpayer for the support of an institution for the care of the insane, and also to pay for his own maintenance there. What is paid as taxes is for the benefit of the public. What is paid for the support of an individual is for his own benefit. Whether all patients at the state hospital for the insane shall be maintained at the public charge, or whether those possessed of sufficient property shall be required to pay their way, is purely a matter of policy, to be determined by the legislature." (p. 371.)

The only real question in the case is whether the father is liable under the statute for the care and maintenance of an adult insane son. The question was suggested but not decided in *The State v. Bryan,* 105 Kan. 483, 185 Pac. 25. This and similar statutes have been construed by the courts to be an innovation on the common-law liability. Under the common law the child was not liable for the support and maintenance of the parent, nor was the parent liable for the support and maintenance of an adult child. (See *In re Erickson,* 104 Kan. 521, 523, 180 Pac. 263, and authorities cited in the

opinion.) He was liable for necessaries furnished his child during minority, but the liability ceased when the child arrived at full age. The statute here under consideration merely extends and enlarges the provisions of the common law. It declares that the following relatives of an insane person shall be liable: the husband for the wife and the wife for the husband; the parent for his or her child, and the children for their parents. It merely recognizes the imperfect moral obligation and makes of it a legal one.

In *The People v. Hill,* 163 Ill. 186, there was involved a statute which provided that every poor person unable to earn a living in consequence of any bodily infirmity, idiocy, lunacy or other unavoidable cause shall be supported by the father, grandfather, mother, grandmother, children, grandchildren, brothers or sisters of such person if either of them be of sufficient ability. The validity of the act was assailed, and it was urged that the statute was a plain attempt on the part of the legislature to impose upon one person a legal liability for the support of another where no such legal duty or liability existed at common law, and took one man's property for the use of another without the owners' consent. In the opinion it was said:

"But, as we have seen, there was no perfect common-law duty requiring even the parents to maintain their children beyond the period of their minority. In cases of poverty and inability to earn a livelihood, the duty of such parents to support their children after the age of maturity, the duty of grandparents to maintain their grandchildren, and of children to supply the necessaries of life to their parents, were all mere moral and imperfect duties that the common law did not recognize and enforce. It can hardly be said that there is no moral duty whatever imposed upon a man who has sufficient financial ability consistently with his duty to himself and to others, to supply the necessaries of life to a brother or sister who is unable to earn a livelihood in consequence of bodily infirmity, idiocy, lunacy or other unavoidable cause." (p. 190.)

A statute somewhat similar was before the supreme court of Massachusetts where it was said that "the fact that the insane person was married and that her husband was lawfully bound to support her cannot exempt the defendant from liability. There is no provision under R. L. chapter 81, section 10, which excepts a father from liability for the support of his daughter as a pauper if she is of full age or is married, nor can such an exception be read into the statute which was intended greatly to enlarge and extend the com-

mon-law liability of relatives of paupers for their support." (*Treasurer & Receiver General v. Sermini*, 229 Mass. 248, 252.)

In *In re Beers*, 148 Mich. 300, a judgment of the probate court which required the father to contribute to the support and maintenance of an insane adult daughter was affirmed.

The judgment is affirmed.