Marshall, C. J.
 

 This is an error proceeding from the Court of Appeals of Lucas county, Ohio, and was filed in this court under claim of right, on the ground that error intervened in the Court of Appeals, which error arises under the Constitution of the State of Ohio and the Constitution of the United States. The plaintiff in error, Charles A. Thatcher, did not file a motion to certify the record on the ground of public and great general interest. This court will therefore have no jurisdiction over this error proceeding, unless it is made to appear that a debatable question arising under the Constitution of the State of Ohio or the Constitution of the United States is presented. Whether or not the lower courts erred in matters not arising under the Constitutions may not properly be considered and
 
 *207
 
 decided if the jurisdiction of this court has not been properly invoked by presenting a constitutional question.
 

 This cause originated in the probate court as a condemnation suit by the railroad company against Charles A. Thatcher to acquire land necessary in the course of eliminating grade crossings. It had been determined as a preliminary question that it was necessary to appropriate property of four different owners to public use in carrying out that project. Under long-continued practice, the same jury was employed to assess the damages of each of the four owners, although in separate proceedings. The condemnation of the Thatcher property was the last of the four, and, when that case came on to be heard, Thatcher objected to the use of the same jury, and demanded a new jury, which was by the court refused. That portion of the record which is before this court does not show that the objection was made on constitutional grounds, but, rather, it appears that he objected to the jury because of the knowledge it had acquired of the entire matter by having disposed of three previous cases involving the same legal questions, and, in large measure, the same facts. The case thereupon proceeded to judgment in the probate court. Error was then prosecuted to the court of common pleas, but no constitutional questions were urged in that court. Error was then prosecuted to the Court of Appeals, and again plaintiff in error failed to present any constitutional question. The petition in error filed in this court was the first to assign as error that “the judgment and decree of the lower court operates as the taking of the property of plaintiff in error without due process of law and
 
 *208
 
 in contravention of the Constitution of the State of Ohio and the Constitution of the United States. ’ ’
 

 It is argued in this court that it was error in the trial court to assess damages by the verdict of a mixed jury of men and women. Our attention is called to Section 5 of Article XIII of the Ohio Constitution: “No right of way shall be appropriated to the use of any corporation until full compensation therefor be first made in money, or first secured by a deposit of money, to the owner, irrespective of any benefit from any improvement proposed by such corporation; which compensation shall be ascertained by a jury of twelve men, in a court of record, as shall be prescribed by law.”
 

 It is claimed that this constitutional provision should be strictly construed, and that men only may serve upon such a jury. Inasmuch as this objection was not urged at the time the jury was impaneled, the question arises whether a court of review is required to give consideration to it. There is no claim that a substantive right guaranteed by the Constitution of Ohio has been denied. It is only claimed that a remedial provision of the Constitution has not been strictly observed.
 

 If the constitutional provision related to the jurisdiction of the trial court over the subject-matter of the action, a different question would be presented. The Constitution did not seek to limit the jurisdiction in appropriation proceedings to any particular court, but, on the contrary, left that matter entirely to the General Assembly. Section 5, Article XIII, guaranteed citizens against seizure of their property for public use, unless the value be ascertained by jury, but it did not require that citizens shall submit such issues to a jury. It was a guaranteed
 
 *209
 
 right, which might nevertheless he waived altogether. The parties might have agreed between themselves as to the value. They might have agreed to submit the issue to arbitration. They might have agréed to submit the issue to a jury of less than twelve men. The only limitation upon jurisdiction was that the issue must be tried in a court of record, the procedure to be prescribed by law. It may be that, where the existence of a right depends upon a statute, and, except for such statute, no cause of action could be stated, the unconstitutionality of the statute need not be urged as a defense in the court of first instance. In such case a petition based upon an unconstitutional statute would be demurrable, and such ground of demurrer could, like a question of jurisdiction over the cause itself, be asserted even after judgment. It is well settled that, where grounds of general demurrer exist, that is to say, where it is shown that a cause of action is not stated or proven, or where the trial court did not have jurisdiction over the subject-matter, the proceedings may be treated as a nullity, and that a demurrer after judgment will be sustained. On the other hand, where the claimed error relates to matters of remedy, it is equally well settled that the objection must be urged in the court of first instance, and that a failure to make timely objection will be regarded as a waiver. The objection in this case relates to the remedy. The probate court is a court of record, and is clothed by statute with ample jurisdiction, and complete procedure is provided. The procedure must, of course, be followed, and, if timely objection is made, a failure to follow the prescribed procedure would be erroneous. The Constitution guarantees the right of jury trial in felony
 
 *210
 
 cases, but this guarantee is not compulsory, but, on tbe contrary, may be waived.
 

 This proposition was discussed at length in
 
 State, ex rel. Warner,
 
 v.
 
 Baer,
 
 103 Ohio St., 585, 134 N. E., 786, and that discussion need not be further elaborated at this time. Surely the same principle must apply in proceedings to appropriate private property for public use. It was decided in this court in
 
 Stephenson
 
 v.
 
 State,
 
 119 Ohio St., 349, 164 N. E., 359, that, except where the jurisdiction of the trial court over the subject-matter of the action is involved, objections must be made and exceptions reserved in the trial court. That case involved constitutional procedure, and is therefore similar in principle to the instant case. The discussion in the opinion in that case and the cases cited are clearly applicable to the instant case. The objections not having been made, and the question being presented in this court for the first time, this court may not properly reverse the judgment upon that ground.
 

 The foregoing discussion might properly dispose of this case upon principles of adjective law, but, inasmuch as a question has been presented which may well arise in any future appropriation proceedings, where juries may be composed of both men and women under existing laws, it is deemed proper to make a declaration upon that subject. Section 5 of Article XIII has already been quoted. Plaintiff in error calls attention to a slight difference in the language found in Section 19 of Article I, which is the general provision which prohibits the taking of private property for public use without compensation. That section contains the following clause: “Such compensation shall be assessed by a jury,
 
 *211
 
 without deduction for benefit to any property of the owner.”
 

 It is argued that, because the Constitution provides that in general appropriation proceedings the damages shall be assessed by a “jury,” and in another provision relating to appropriation for the use of any corporation provides that the damages shall be assessed by a “jury of twelve men,” the framers of the Constitution intended a different character of jury in each instance. If the language of Section 5 of Article XIII had been such as to affirmatively prohibit women from sitting on a jury, the provision would necessarily be strictly enforced, whether or not there was any logic in so providing. Manifestly, a provision in general appropriation cases, permitting a mixed jury, and a provision in appropriation proceedings for the use of corporations, requiring a jury of men only, could have no foundation in logic. It is probable that the difference in language is due to the fact that the provisions are found in separate chapters, concerning separate subjects, and were therefore prepared under separate authorship. Inasmuch as the Nineteenth Federal Amendment was not then even under contemplation, it may not fairly be presumed that the framers of the Ohio Constitution had any thought that either jury would be composed otherwise than of men only. Section 5 of Article I provides that the right of trial by jury shall be inviolate, and the only qualification upon that right is that in civil cases a verdict may be rendered by the concurrence of not less than three-fourths of the jury..
 

 Nowhere does the Constitution place any limitation upon the Legislature in defining the qualifica
 
 *212
 
 tions of jurors. The right of trial by jury refers to the mode of trial, and not to the qualifications of jurors. It is argued, however, that, inasmuch as the bill of rights contains guarantees of a general nature, and Article XIII contains guarantees of a more specific nature, the latter therefore becomes an exception and a limitation upon the general provisions of the bill of rights. We cannot indorse that view. The word ‘ ‘men ’ ’ in Section 5 of Article XIII is used in a generic sense and synonymous with “persons.” The framers of the Constitution did not intend to define the qualifications of jurors, but only intended to provide for the mode of trial and the tribunal which should assess the damages.
 

 A case which is very similar in principle to the instant case is that of
 
 Browning
 
 v.
 
 State,
 
 120 Ohio St., 62, 165 N. E., 566, decided by this court February 20,1929, in which paragraph 1 of the syllabus reads: “The word ‘men,’ used in Section 13568, G-eneral Code, was there used in a generic sense rather than a specific sense, and not to distinguish between men and women.”
 

 The only difference between that case and the instant case is that the one construes language of a statute and the other language found in the fundamental law. In the state of Michigan the Constitution contains a reference to a jury of “men. ’ ’ But it was held in
 
 People
 
 v.
 
 Barltz,
 
 212 Mich, 580, 180 N. W., 423, 12 A. L. R., 520, that the word was used in the generic sense of persons rather than in the more limited sense of males. If Section 5 of Article XIII had been written into the Constitution after the adoption of the Nineteenth Federal Amendment, a more difficult question would be presented, but,
 
 *213
 
 that provision having been adopted at a time when there was no serious thought of women becoming electors, and therefore becoming jurors, it would be placing a narrow and an illogical interpretation upon the work of the people to hold that any discrimination was intended in the qualifications of jurors in appropriation proceedings for public use generally, on the one hand, and. appropriation proceedings for the use of corporations, on the other.
 

 The judgment of the Court of Appeals must therefore be affirmed.
 

 Judgment affirmed.
 

 Kinkade, Robinson, Jones, Matthias, Day and Allen, JJ., concur.