Argued September 14; affirmed November 28, 1933; rehearing
denied February 13, 1934

In re Idleman's Commitment
IDLEMAN *v.* STATE
(27 P. (2d) 305)

C. M. *Idleman* and H. S. *McCutchan*, both of Portland (McDannell Brown, of Portland, on the brief), for appellant.

*Charles S. Cohn*, Deputy District Attorney, of Portland (Lotus L. Langley, District Attorney, of Portland, on the brief), for the State.

ROSSMAN, J. The sole issue presented by this appeal is the validity of 1931 Session Laws, chapter 187, the title of which is: "Requiring payment by the estate and/or relatives, who are financially able to do so, for the care and maintenance of insane and feeble-minded persons committed to state institutions, and requiring counties to pay for maintenance in certain cases; to be administered by the state board of control, and providing an appropriation therefor." Section 1 of the act provides that if any person committed to a state institution for the insane or the feeble-minded "or a close relative of such person, shall be possessed of an estate or income sufficient to meet the expenses of his or her care and maintenance without depriving of necessary support those, if any, dependent upon such person or relative, then the guardian or responsible relative of such person shall be required to reimburse the state of Oregon for the cost and expense of the care, board, lodging and clothing of such person during his or her stay in such state institution". Section 2 provides that the relatives shall

be liable "as follows: The husband for the wife, the wife for the husband, the parent or parents for his or her children, and the children for their parents, according to their respective abilities to pay". Section 3 provides that as a part of the proceedings for the commitment of an insane or feeble-minded person, the county judge shall cause a citation to be served by the sheriff "citing the said person against whom proceedings for commitment for insanity or feeble-mindedness shall have been commenced, and his guardian, if such person or persons is under guardianship, and husband or wife, the parents and children, if any, of such person, to appear * * * and show cause why an order should not be entered adjudging that said person and/or his or her estate and/or relatives are financially able to pay for the care and maintenance of such person in a state institution. * * * If such person so charged with insanity or feeble-mindedness shall not have a guardian, it shall be the duty of said court, if necessary, to appoint some competent, disinterested person at the expense of the county, as guardian ad litem to appear for and who shall have full authority to represent such person. * * * Findings of fact shall be made as to the ability to pay for such care and maintenance as above set forth and an order therein against the proper person or persons or estate so found responsible, and fixing such liability. And an appeal may be taken to the circuit court within thirty days in the ordinary manner for taking appeals from orders of the county court or other court having jurisdiction of probate proceedings". The same section further provides that upon request the district attorney must present evidence "with respect to the ability of the estate of such person or his relatives to pay the cost of such care

and maintenance'', and that when further directed by the board of control the district attorney must ''appeal such cause to the circuit court and/or the supreme court''. Section 4 provides: ''Each insane or feeble-minded person, his estate or relatives, as above set forth found to have the financial ability to pay for care and maintenance as above specified, shall pay therefor the sum of $20 per month, or such portion thereof as the court may find them able to pay, during the time such insane or feeble-minded person is an inmate of a state institution. * * * It hereby is made a matter of record that the maximum amount of $20 herein established is less than the actual total average cost per capita for care and maintenance of inmates at the Oregon state institutions for the insane and feeble-minded. * * * If at any time it shall be proved that the actual total average per capita monthly cost for care and maintenance * * * is less than $20 then, and from that date, this monthly charge wherever it appears in this act hereby is reduced to the actual amount thus determined.'' Section 5 provides that upon the arrival of any committed person at the hospital for the insane the superintendent ''shall determine whether or not such insane person is violently insane and dangerous to life or property''. If the individual is not violently insane, and if the court has found that his estate and relatives are unable to pay for his maintenance, then the full amount charged for care and maintenance must be paid by the county from which the commitment was made. Section 6 provides that all inmates of the aforementioned institutions ''and their estate and/or relatives, as their respective responsibility may appear, shall, upon the taking effect of this act, be liable for the payment'' of the above-mentioned charges. Section 7 provides that after the

enactment of this law the board of control must forward to the county judge of each county from which any of the present inmates of the above-mentioned institutions were received a list of inmates received from his county, and the county judge shall thereupon issue a citation "for each person on such list, the guardian and relatives aforesaid to appear and show cause and to determine their ability to pay as provided herein. Findings of fact shall be made relative to the financial ability to pay maintenance as above set forth, and an order entered therein against the proper person or persons or estate so found responsible" in a sum not exceeding $20 per month from the time that the act became effective. Continuing, this section provides: "An appeal may be taken to the circuit and/or supreme court as in cases above specified. * * *" Section 8 provides that after the enactment of this law the superintendents of the state's hospitals for the insane shall send to the county commissioners of each county a list of all non-violent inmates committed from that county and that if their maintenance charges are not paid by their estates or relatives it must be paid by the county from which the commitment was made. Section 9 provides: "The full cost of care and maintenance for each person committed to a hospital for the insane and found to be not violently insane or dangerous to life or property shall be paid to the state by the estate or relatives of the said person or by the county. If the court has found that the said insane person, his estate or relatives have the financial ability to pay a portion but not all" of the charge, the county must pay the balance. Section 12 provides that where relatives or the county pay the above-mentioned maintenance charge "they shall not be required to furnish clothing as provided in section 67-1710, Oregon Code

1930''. Section 14 reserves to the court, which has entered the order for the payment of the maintenance charges, the power to modify it upon a change in the attendant circumstances. We shall not pause to review the remaining sections of the act, nor portions of the sections already mentioned which we have not reviewed, because we deem them immaterial to the contentions advanced by the appellant.

■ The first contention advanced by the appellant is that the act and its title embrace more than one subject, in violation of article IV, section 20, of the Oregon constitution, which provides: ''Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title.'' In support of this contention, the appellant, after pointing out that the title of the act mentions insane and feeble-minded persons committed to the state institutions provided for their care, argues that the hospitals for the insane and the institution for the feeble-minded are the subjects of this act. Although we have given careful consideration to this contention, we are wholly unable to bring ourselves into accord with it. It is our belief that the subject of this new law is its requirement that the expense of the maintenance of the inmates of the institution for the feeble-minded and the non-violent inmates of the state hospitals for the insane shall be defrayed by the estate of the inmate, if he possesses one; if he has none, then by such of his relatives as are mentioned in the act and are able to do so, and if they cannot discharge the expense the county from which the commitment was made must do so. The fact that the unfortunate person is in the one institution or the other is a wholly immaterial detail. The support money exacted by this law is not payable to either of the two institutions and they

remain wholly untouched by this legislation. In *State v. Bateman,* 110 Kan. 546 (204 P. 682), a Kansas statute, substantially similar to ours, was subjected to a similar attack, but the validity of it was sustained, even though its title was not as informative as that of ours. The purposes of acts similar to the one under investigation enacted in several of the other states have been construed in the same manner in which we have construed ours. For a collection of the decisions, see the annotation accompanying *State v. Heupel,* 114 Neb. 797 (210 N. W. 275, 48 A. L. R. 728, at page 733). We find no merit in this contention.

██ Next, the appellant points out that although section 3 of the act, as we have seen, requires the county court to appoint a guardian ad litem for one alleged to be insane, and whom the state contends should pay for his maintenance upon commitment, power to appoint guardians is not mentioned in the title of the act. The appointment of guardians ad litem is not the objective which the act seeks to achieve, but is merely one of the means or instrumentalities by which the real objective is attained, and, hence, it was not necessary to mention this item in the title: *State of Oregon v. Shaw,* 22 Or. 287 (29 P. 1028); 25 R. C. L., Statutes, p. 858, § 104. See, also, *State ex rel. v. Tazwell,* 125 Or. 528 (266 P. 238, 59 A. L. R. 1436), and *Calder v. Orr,* 105 Or. 223 (209 P. 479). The mere fact that section 1-306, Oregon Code 1930, makes provision for the apportionment of guardians ad litem for insane or idiotic persons when they are defendants in ordinary suits and actions in the manner specified in that section of our laws did not prevent the legislature from making provision for their appointment in a slightly different manner in these special statutory proceedings.

■ Next, the appellant calls attention to the fact that section 12 of the act frees a relative, who is paying the prescribed maintenance charge of an inmate confined in the institution for the feeble-minded, from the duty of supplying the inmate with clothing "as provided in section 67-1710, Oregon Code 1930" and then argues that this item is not mentioned in the title. Section 67-1710 provides that it is the duty of the parents or guardian of any feeble-minded person who is an inmate of the institution for the feeble-minded, when financially able to do so, to furnish suitable clothing for the inmate. We believe that this provision is sufficiently indicated in the portion of the title of the act which declares that relatives are charged "with the care and maintenance of insane and feeble-minded persons committed to state institutions". Clothing, of necessity, is one of the items that constitutes a part of the care and maintenance.

■ Appellant contends that the section just mentioned undertakes to amend section 67-1710, Oregon Code 1930, by reference to its title in violation of article IV, § 22, Oregon Constitution, which provides: "No act shall ever be revised or amended by mere reference to its title but the act revised or section amended shall be set forth and published at full length." We fail to find any conflict between section 12 of the act and this provision of our constitution. Section 12 would be complete even though it did not employ the words "as provided in section 67-1710, Oregon Code 1930". It repeals by implication section 67-1710 but such repeals are not prohibited by the above-mentioned section of our constitution: *Columbia River Bridge Co. v. Wellington,* 140 Or. 413 (13 P. (2d) 1075) ; *Patton v. Withycombe,* 81 Or. 210 (159 P. 78) ; *Warren v. Crosby,* 24 Or. 558 (34 P. 661).

██ The appellant next contends that the statute violates article I, section 18, of the Oregon constitution, which provides: "Private property shall not be taken for public use, nor the particular services of any man be demanded without just compensation. * * *" He argues that the statute authorizes the grant of an ex parte judgment in favor of the state against the estate of the ward or against the ward's relatives if the ward has no estate. Long prior to the enactment of this statute our legislative assembly, recognizing the moral obligation which every member of a family owes to support any member in want, enacted several laws, the validity of which has long been recognized, making this moral duty a legal one. Section 14-845, Oregon Code 1930, subjects to a penalty every person who fails, without just cause, to support his wife or minor children. Section 14-853 subjects to a penalty every person over the age of twenty-one, who, having the ability to do so, fails to support his indigent parents. Section 33-207 authorizes the circuit court to enter an order against a husband directing him to provide support for his wife and minor children. Section 33-206 subjects both husband and wife to liability for all expenses of the family, including the education of the children. Thus it is seen that the statute before us does not add any new relative to the family group which must bear the expense of maintaining an indigent member, although it does not recognize the age limitation mentioned in sections 14-845, 14-853 and 33-207. And if it can be said, as was held in *Richardson v. Stuesser,* 125 Wis. 66 (103 N. W. 261, 69 L. R. A. 829), that a husband's common-law duty does not require him to provide support for his wife when she is living apart from him, due to no fault of his, this statute enlarges upon his duty because it requires him to

make provision for her support when she is confined at a state hospital for the insane. It was clearly within the law-making power of the legislature to define within what degree of consanguinity the liability for support in state institutions should be cast upon a relative: *People, Peoria County v. Hill,* 163 Ill. 186 (46 N. E. 796, 36 L. R. A. 634). In the case just cited the validity of a statute was sustained which cast upon the father, grandfather, mother, grandmother, children, grandchildren, brothers and sisters of indigents the duty of supporting them. In sustaining the validity of this act, the court pointed out that the statute of 43 Eliz., chapter 2, section 7, required the father, grandfather, mother, grandmother, and the children of every poor, old, blind, lame and impotent person to support them. We are clearly satisfied that the subject-matter of this act is within the scope of the legislative power. The mere fact that the defendant's wife is in an institution, which up to this time has been regarded as a charitable one, did not prevent the legislature from changing its character. As was said *In Re Yturburru,* 134 Cal. 567 (66 P. 729):

"These institutions for the insane are charitable only so far as the legislature makes them so. There is nothing in the constitution inhibiting laws extending charity to people in need of it; but it is not necessary to extend charity to those who are able to support themselves; indeed, it would be unreasonable to do so. A law in effect requiring that patients at the hospitals for the insane shall be there supported out of their own estates is wise and reasonable and does not come within any inhibition of the constitution against class legislation."

Some courts declare that those who possess estates ought not expect the public to support them free of charge in the state hospitals, and have allowed judg-

ment against the estates of the inmates, even in the absence of statutes. One illustration is *McNairy County v. McCoin,* 101 Tenn. 74 (45 S. W. 1070, 41 L. R. A. 862). Other courts have allowed recoveries against the relatives: 21 R. C. L., Poor & Poor Laws, p. 724, § 27.

■ The defendant, in support of his contention that this statute takes property without providing just compensation, contends, as we have already seen, that the proceedings culminating in the order directing the payment of a maintenance charge are ex parte in character. The maintenance charge proceeding, as we have seen from section 3 of the act, is a part of the inquest (§§ 67-1606 and 67-1702, Oregon Code 1930) into the mental condition of the person concerning whom an information has been filed. The inquest no longer terminates with an order of commitment, if the proof discloses a necessity for commitment, but the court, in addition to entering such an order, is required to make findings of fact concerning the ability of the unfortunate individual and his relatives to pay for his maintenance. If these findings indicate ability to pay, the court must enter an order to that effect. The investigation into the capacity of the committed person's estate and his relatives to pay the maintenance charges is preceded by a citation served by the sheriff upon all those who will be affected by the prospective order. The citation requires those upon whom service is made to appear and show cause why an order should not be entered requiring them to contribute towards the care and maintenance of the individual under investigation in the event of his commitment. The act empowers the court to issue subpoenas, administer oaths to witnesses, and to conduct the needed investigations. The notice and the opportunity to be heard negative the contention that the proceeding is ex parte. In fact, the courts

under similar statutes declare that such proceeding constitutes due process of law: *State v. Johnson,* 50 Idaho 363 (296 P. 588). The issues to be tried are (1) the mental condition of the individual concerning whom the information has been filed; (2) the financial condition of his estate, if any; (3) the relationship to him of the others upon whom the citation was served; and (4) their ability to pay for his support in the event that he cannot pay it himself. The act makes the prescribed maintenance charge of $20 presumptive proof of its reasonableness, but in the event that contrary proof is offered the reasonableness of that charge also becomes the subject-matter for investigation. The act provides for an appeal to the circuit court in the event the trial is held in a county court, and an appeal from the circuit court to the supreme court. The only difference which we are able to discern between this special proceeding and the ordinary course of a cause is the absence of all pleadings with the exception of the citation, but, since the issues are limited in scope to the aforementioned, the absence of other pleadings, in all likelihood, will never be prejudicial to those upon whom the citations are served. Since the liability is a statutory one, there is no reason why the procedure for its enforcement cannot depart from the general course otherwise provided in our code. As we have seen above, the proceedings are not ex parte. We do not believe that this procedure violates any constitutional provision: *People, Peoria County v. Hill,* supra; 12 C. J., Constitutional Law, p. 1224, § 999.

■ The appellant next argues that the act violates article I, section 20, Oregon constitution, which is as follows:

"No law shall be passed granting to any citizen or class of citizens privileges or immunities which, upon the same terms shall not equally belong to all citizens."

In support of this contention, he calls attention to the fact that if the ward's estate is unable to pay for his maintenance his relatives, if able, must do so. A sufficient answer to this contention is the following taken from *In Re Yturburru,* supra:

"The distinction between the helpless and those able to help themselves is a natural one, and so far as we are informed pervades the laws of all civilized countries."

In all of the following cited decisions the validity of statutes which imposed upon the estates of insane and feeble-minded inmates of state institutions the cost of their maintenance, if able to bear it, was sustained. In some instances the statute under attack provided that if the inmate possessed no estate his relatives must discharge the cost of his maintenance: *Napa State Hospital v. Dasso,* 153 Cal. 698 (96 P. 355, 18 L. R. A. (N. S.) 643, 15 Ann. Cas. 910); *In Re Yturburru,* supra; *State Commission in Lunacy v. Eldridge,* 7 Cal. App. 298 (94 P. 597); *Mansley's Estate,* 253 Pa. 522 (98 Atl. 702); *State v. Troxler,* 202 Ind. 268 (173 N. E. 321); *Bon Homme County v. Berndt,* 13 S. D. 309 (83 N. W. 333, 50 L. R. A. 351; 15 S. D. 494, 90 N. W. 147). In the case last cited the validity of the statute was sustained, although it subjected the inmate's estate to the expense of his maintenance only in the event that he had no heirs or dependents.

The appellant next contends that this act "impairs the obligation of contract and is ex post facto in its nature, and is in contravention of article I, section 21, of the constitution of the state of Oregon". The section just cited provides: "No ex post facto law or law impairing the obligation of contracts shall ever be passed. * * *" The appellant seems to believe that, since the state institutions mentioned in this act have

been supported in the past by taxation, the state cannot exact a charge from the inmates or their relatives to defray the cost of the inmates' maintenance. He seems to believe that the state has somehow imposed upon itself a contractual duty to maintain these institutions solely at the expense of the taxpayer. It is evident that both the incompetent and his immediate relatives receive a very valuable service from the state when he is placed under the care of the state's trained psychiatrists in an institution where his prospects for recovery, when present, are facilitated and where he is guarded from the dangers attendant upon his helpless condition. Under such circumstances the contributions made by the taxpayers are for the benefit of the public, while the sum paid in support of any particular inmate by himself or his relatives is for his personal benefit: *State v. Bateman,* 110 Kan. 546 (204 P. 682). The sum exacted by this statute is not a tax but is mere payment for a service rendered by the state institutions: *Guthrie County v. Conrad,* 133 Iowa 171 (110 N. W. 454); *State v. Huwe,* 105 Ohio St. 304 (137 N. E. 167); *State Commission in Lunacy v. Eldridge,* supra. The impression which the Nebraska court once held (*Baldwin v. Douglas County,* 37 Neb. 283 (55 N. W. 875, 20 L. R. A. 850)), and which is echoed in the appellant's brief, that statutes of this kind impose plural taxation, has been expressly repudiated by the Nebraska court: *State v. Heupel,* 114 Neb. 797 (210 N. W. 275, 48 A. L. R. 728). We find nothing in the statute which in any manner affects any contract. The act does not conflict with the section of the constitution to which the appellant makes reference because the statute under review is not a criminal one, and the above-mentioned section of our constitution has reference only to criminal statutes: *Fisher v. Astoria,* 126

Or. 268 (269 P. 853, 60 A. L. R. 260). Even if the liability created by the statute is retroactive, yet this circumstance could not render it invalid: *State v. Romme,* 93 Conn. 571 (107 Atl. 519); *In Re Person's Estate,* 7 Alaska 626.

 The appellant contends that, since the statute does not contemplate that the issues of fact which must be determined before the order for maintenance is entered shall be determined by a jury, article I, section 17, of our constitution is violated. It provides: "In all civil cases, the right of trial by jury shall remain inviolate." This provision does not extend the right of trial by jury, nor render it universally available, but merely preserves it in all those classes of action in which it was available at the time the constitution was adopted: *State v. 1920 Studebaker Touring Car,* 120 Or. 254 251 P. 701, 50 A.L.R.81). In New York and New Jersey where inquisitions into the sanity of those concerning whom an information had been filed were conducted, with the assistance of a jury, at the time the constitution was adopted, the courts have held that the constitutional provisions preserving trial by jury render it available in sanity inquests: *Sporza v. German Savings Bank,* 192 N. Y. 8 (84 N. E. 406); *In Re McLaughlin,* 87 N. J. Eq. 138 (102 Atl. 439). But where proceedings to determine lunacy were not triable by jury at the time the state constitution went into effect, trial by jury in those instances is not available as a matter of right: *Crocker v. The State,* 60 Wis. 553 (19 N. W. 435); *Ex Parte Scudamore,* 55 Fla. 211 (46 So. 279); *In Re Phillip Duerr,* 25 Pa. Dist. Ct. 406 (upholding the validity of a proceeding substantially similar to our present one). Some courts have held that a proceeding to determine sanity is not the type of case within the contemplation of this constitutional provision, and that

therefore it is not within the guarantee: *Re Bresee,* 82 Iowa 573 (48 N. W. 991); *Gaston v. Babcock,* 6 Wis. 503; 14 R. C. L., Insanity, p. 560. For a discussion and collection of citations, see the annotation to *White v. White,* 108 Tex. 570 (196 S. W. 508, L. R. A. 1918A, 339). Sections 9 and 10 of 1853 Statutes of Oregon, pages 362-363, which were in effect at the time our constitution was adopted, provided:

"Sec. 9. When the relations or friends of any insane person or any other persons, inhabitants of the county in which such insane person resides, shall apply to the probate judge by petition in writing, to have a guardian appointed for him, the judge shall cause notice to be given to the supposed insane person of the time and place appointed for hearing the case, not less than ten days before the time so appointed; and if, after a full hearing, it shall appear to the probate judge that the person in question is incapable of taking care of himself, the judge shall appoint a guardian of his person and estate, with the powers and duties hereinafter specified.

"Sec. 10. Every guardian so appointed for an insane person shall have the care and custody of the person of the ward, and the management of all his estate, until the guardian shall be legally discharged, and he shall give bond to the territory of Oregon, in like manner and with like conditions as is before prescribed with respect to the guardian of a minor, excepting that the provision relating to the education of the ward, shall be omitted in the condition of the bond."

When the above statute was in effect the territory of Oregon conducted no hospitals for the insane or feeble-minded. It is apparent from the quoted statute that at the time our constitution was adopted proceedings to determine lunacy and to appoint guardians for incompetents were not triable by a jury. We are not aware of any statute enacted since the above which has

provided that proceedings to determine lunacy or secure the appointment of a guardian for an insane or feeble-minded person shall be determined with the assistance of a jury. Our laws have never differentiated between temporary restraints and those of a more permanent character. Our present statutes require the probate judge before whom an information averring insanity or feeble-mindedness to secure the assistance of medical experts before determining the issue: Sections 67-1606 and 67-1702, Oregon Code 1930. We have held that probate proceedings are not "civil cases" within the contemplation of the constitutional provision upon which appellant relies: *Stevens v. Myers,* 62 Or. 372 (121 P. 434, 126 P. 29). A statute authorizing summary proceedings to enforce a relative's liability created by the statute to support an indigent member of his family is not invalid because it fails to make provision for trial by jury: *People, Peoria County v. Hill,* supra. It is evident that in proceedings of the character now before us trial by jury was not available at the time of the enactment of our constitution, and hence this statute does not conflict with the section of our constitution above quoted.

Finally, the appellant contends that this statute employs language so ambiguous that it violates article IV, section 21, Oregon constitution, which provides: "Every act and joint resolution shall be plainly worded * * *." Possibly every portion of the act is not as plainly worded as one might desire, but, nevertheless, the act clearly expresses its purpose, that if a non-violent inmate cannot pay for his maintenance, his relatives, as delineated in the act, shall do so, and, if they cannot, the county from which the commitment was received must do so. The liability of the relatives, in our opinion, is joint and several.

The above disposes of all contentions advanced by the appellant. We have not mentioned in this decision all of the authorities cited in his able brief, but have, nevertheless, examined them.

It follows from the above that the decision of the circuit court is affirmed.

RAND, C. J., BELT and KELLY, JJ., concur.