Hart, J.
Defendant’s principal claim of error is that the verdict of the jury and judgment *of the court are violative of the provisions of the Constitutions of the state of Ohio and of the United States. The question for decision may be stated thus: Is the estate of a deceased parent liable under the provisions of Section 1815-9, General Code (Section 5121.06, Revised Code), for the support of an adult son while an inmate of a state institution, even though no claim was made by the state for such support during the lifetime of such deceased parent?
Incidentally, the agreed statement of facts discloses that, during her lifetime, there was no attempt to assert liability for such support against Gertrude Fronskowski.
Section 1815-1, General Code (Section 5121.02, Revised Code), reads as follows:
“When any person is committed to a state hospital for the mentally ill, to the Ohio Hospital for Epileptics, or to an institution for the feeble minded, the judge making such commitment shall at the same time certify to the superintendent of such institution, and the superintendent shall thereupon enter upon his records the name and address of the guardian, if any appointed, and of the relative or relatives liable for such person’s support under Section 1815-9.”
Section 1815-9, General Code, reads as follows:
“It is the intent of this act that a husband may be held liable for the support of a wife while an inmate of any of said institutions, a wife for a husband, a father or mother for a son or daughter, and a son or daughter, or both, for a father or mother.”
*602 The General Assembly, recognizing that some relatives of an inmate of a state institution might be unable to pay for the cost of the support of such inmate, set out in Sections 1815-3, 1815-4 and 1815-5, General Code (Sections 5121.04, 5121.05 and 5121.07, Revised Code), a scheme of administrative procedure whereby the Department of Public Welfare of the state could modify or relieve from current payments those persons liable for the support under the provisions of Section 1815-9, General Code, above quoted.
These sections of the Code, so far as they are pertinent to the question at issue, provide that the Department of Public Welfare shall appoint an agent whose duty it is to investigate the financial condition of the inmates of state benevolent institutions under its control and of the relatives liable for the support of such inmates, in order to determine the ability of such an inmate or relative to make payment in whole or in part for the support of such inmate. All the agent’s information, conclusions and recommendations shall be submitted to the Department of Public Welfare, which shall determine the amount of the support, if any, to be paid by the relatives or guardian. An order shall then be issued to the persons who are determined liable for such payments requiring them to pay the state on terms arranged such amount as the department shall deem proper. The payments, so fixed, then become a debt collectible through legal process. After the order is made, any person who has been ordered to make payment for the support of .an inmate may petition the Department of Public Welfare for a release from or modification of such order, whereupon, after investigation, the department may cancel or modify such order, but shall, at any time for due cause, have the power to increase the amount of such payments.
*603 Defendant in Ms brief treats the procedure, in substance above set out, as the process by which the obligation against a relative of an inmate is created, and then complains that there is lack of due process because there is no provision for notice of any hearing, no provision for hearing or defense, and no provision for appeal, and, consequently, there results an obligation which violates constitutional guaranties.
It is the view of this court that the obligation of the relative or relatives named in the statute for the support of an inmate is a contingent joint and several liability created by the statute itself, independent of the Department of Public Welfare, and that the procedure referred to is followed under the discretionary powers of the department to secure an equitable collection of the financial obligations so created by the statute. See State v. Stevens, 161 Ohio St., 432, 119 N. E. (2d), 616.
That the obligation referred to is a creature of statute is indicated by the language of the statute itself, since it provides that certain specified persons “may be held liable for the support,” using the word, “may,” in the sense of “shall.” The statute also specifically limits and names the personal relationships as to which the statute and its obligatory terms apply. The procedure under the statute also indicates that the department does not create the obligation. It may cancel or modify the order as to payment, but it is given no power to cancel or modify the obligation or liability specifically defined in and created by statute.
Under this conception of the statute, the obligation against the mother for the son’s support arose before and not after her death and consequently became automatically a debt of her estate upon her death. The constitutionality of the statute imposing the obligation is a different matter.
*604 An examination of the record discloses that a question as to the constitutionality of the statute creating the liability of the mother in the instant case was not raised either in the Common Pleas Court or in the Court of Appeals. The only defenses set up in defendant ’s answer in the Common Pleas Court are that the state’s claim was not filed with the administrator within the time limit provided by law, and that there was a failure upon the part of the state to comply with Section 1815-4, General Code, in that no order was issued whereby the deceased mother was determined to be the person liable for payment of the amount which the department should deem proper.
This court has held on frequent occasions that a constitutional question not raised in either the trial court or the Court of Appeals will be deemed by the Supreme Court to have been waived, and an appeal based thereon will be dismissed. Village of Clarington v. Althar, 122 Ohio St., 608, 174 N. E., 251; Thatcher v. Pennsylvania, Ohio & Detroit Rd. Co., 121 Ohio St., 205, 167 N. E., 682. However, considering the constitutionality of the statute in question, imposing, as it does, liability upon certain relatives for the support of inmates of the mental institutions of the state, without reference to the age of such inmates, the defendant is not entitled to relief.
Under the statutes of many states, a mutual obligation of support is imposed upon children to support indigent parents and upon parents to support indigent adult children, especially where the support consists of necessary medical treatment, conditioned in either ease upon financial ability to do so. The liability of the parents of an insane or feeble-minded adult child for his support in a state institution, where properly established, has been recognized and upheld in this state and elsewhere. State v. Stevens, supra; Commonwealth v. Zommick, 362 Pa., 299, 66 A. (2d), 237; *605 State v. Bateman, 110 Kan., 546, 204 P., 682. See annotation, 1 A. L. R. (2d), 910, 941 and 942. The purpose of such statutes is to create, as between parents and adult children, a legal obligation which previously was only a moral one resting upon close blood relationships and humanitarian considerations. See 41 American Jurisprudence, 685, Section 7. The obligation to support under the statute is generally, if not always, dependent upon the ability of the obligor to pay. State v. Stevens, supra.
These statutes have very generally been held to operate within the constitutional rights of the persons obligated under them. State v. Bateman, supra; Manley Estate, 253 Pa., 522, 98 A., 702.
The judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Weygandt, C. J., Matthias, Zimmerman, Stewart, Bell and Taet, JJ., concur.