The State v. Bryan.

---

No. 22,208.

*In re* THE ESTATE OF JAMES F. JOHNSTON, Deceased (THE STATE OF KANSAS, *Appellant,* v. D. D. BRYAN, Executor, etc., *Appellee*).

SYLLABUS BY THE COURT

1. WILL—*Provision for Payment of Just Debts.* The statement in a will that the testator desires, first, all his just debts paid, adds nothing to the will or to the liability of his estate for his debts.

2. INSANE PERSON—*Cost and Expense of His Support—Effect of Finding of Probate Court.* A judgment and finding of the probate court in 1902, at the time an insane person was committed to the state hospital, to the effect that the insane person had no estate, and imposing the cost and expense of his support upon the state, is construed merely as a determination of the financial status of the insane person at that time, and as meaning that so long as the status remained the same his support should be charged to the state.

3. SAME—*Expense for Support of Insane Person—How to be Paid—Construction of Statutes.* Sections 6128, 6129, and 6130 of the General Statutes of 1915, providing that the expense for the support of a person adjudged to be insane shall be paid by the guardian out of his estate, "or by any person who by law is bound to provide for and support such person," are construed as imposing a primary liability for such support upon the estate of the insane person, and authorizing the state to recover the per capita cost of his maintenance, care, and treatment, first, from his estate, if he have one; otherwise, from any person who by law is bound to provide for his support.

Appeal from Miami district court; JABEZ O. RANKIN, judge. Opinion filed November 8, 1919. Affirmed.

*Richard J. Hopkins,* attorney-general, *S. N. Hawkes,* assistant attorney-general, and *Karl V. Shawver,* county attorney, for the appellant.

*Alpheus Lane,* and *M. A. Lane,* both of Paola, for the. appellee.

The opinion of the court was delivered by

PORTER, J.: This is a proceeding by the state of Kansas to establish a claim against the estate of James F. Johnston, deceased, for the expense of the care and maintenance of his son, James D. Johnston, who has been an inmate of the state hospital for insane since 1902. The claim was disallowed, both in the probate court and on appeal to the district court. From the judgment, the state appeals.

James D. Johnston was adjudged insane in the probate court of Miami county in 1902, and was committed to the state hospital at Osawatomie. He was then 39 years of age, had married when he was 25, and since his marriage had kept and maintained a home separate and apart from that of his father. Six children were born of this marriage, the youngest soon after James D. Johnston was adjudged insane.

James F. Johnson, father of the insane person, died in 1916, leaving an estate valued at $20,000, consisting largely of real estate in Miami county. His will divided the estate equally among his five children, and the share belonging to the insane person is valued at $4,000.

At the time James D. Johnston was adjudged insane the probate court made a finding that the insane person possessed no estate or property, and in compliance with the statute then in force it was ordered that the costs of the proceeding and of his support be at the expense of the state of Kansas.

The district court made findings of fact, and among them is one to the effect that the judgment and findings of the probate court that the insane person possessed no estate or property has never been changed or modified, and that no application has been made to change or modify it.

The findings of the district court show that James D. Johnston has no property, except the share in his father's estate, which is an undivided one-fifth interest in real estate, which has not been partitioned, and that no distribution of the personal estate of James F. Johnston, deceased, has been made, and that his estate has not been closed. On February 8, 1918,

The State v. Bryan.

D. D. Bryan was duly appointed guardian of the person and estate of James D. Johnston, and as such guardian claims to be in possession of an undivided one-fifth of the 244 acres of land left by James F. Johnston, deceased. An important finding of the court is that James D. Johnston has more than sufficient estate to pay in full the claim of the state against him for care and maintenance since he was declared insane. As a conclusion of law, the court held that the claim of the state against the estate of James F. Johnston should be disallowed.

The point is made by counsel for the appellee that the judgment and finding of the probate court at the time the insane person was committed to the state hospital, imposing the cost and expense of his support upon the state, has the full force and effect of a judgment, and, having never been set aside, constitutes a bar to this proceeding. We cannot concur in this contention. The finding of the probate court went no further than to determine the status at that time. It became a proper part of the commitment of the insane person, for the information of the officials in charge of the state hospital to which he was committed. It was beyond the power of the probate court to declare that the insane person would never have an estate. The finding must be construed merely as a determination of the status at that time, and as meaning that so long as it remained the same the support of the insane person should be charged to the state.

In 1907 the legislature made the following provisions with reference to insane persons:

"The expense attending the support, care and safe-keeping of such person shall be paid by the guardian out of his estate, or by any person who by law is bound to provide for and support such person, or the same shall be paid out of the county treasury." (Gen. Stat. 1915, § 6128.)

"In all cases of appropriations out of the county treasury for the support, care and safe-keeping of any such person, or of any person adjudged insane under the provisions of chapter 353, Session Laws of 1901, who are ineligible for admission to the state hospitals, the amount thereof may be recovered by the county from the estate of such person, or from any person who by law is bound to provide for and support such person; and in all cases of insane persons admitted to the state hospitals, either with or without bond, the state may recover the per capita cost of the maintenance, care and treatment of the inmates of such state hospital and clothing and funeral expenses from the estate

of such person or from any person who by law is bound to provide for and support such person." (Gen. Stat. 1915, § 6129.)

"The following relatives shall be bound by law to provide for and support the persons referred to in sections 31 and 32 of this act [Gen. Stat. 1915, §§ 6128, 6129]·: The husband for the wife and the wife for the husband, the parent for his or her children, and the children for their parents." (Gen. Stat. 1915, § 6130.) .

The main contention of the state is that these sections of the statute make the father of an adult son, who becomes insane, liable for his support. This and a number of other interesting questions are discussed in the briefs, but we deem it unnecessary to pass upon them. They were all raised in the district court, but were not determined there because the court took the view that the estate of the insane person, consisting of his share in his father's estate, is abundantly sufficient to pay any claim the state has for his maintenance in the state hospital, and that in such a case resort should be had in the first instance to the property of the insane person. The district court construed the law as we construe it. The state contends that because James F. Johnston, in his will, made use of the common expression in wills, that it is the testator's desire that all his just debts shall first be paid, therefore the state has a right to look in the first instance to the father's estate for the maintenance of the insane son. A declaration of this kind adds nothing to a will, or to the liability of the estate of the testator for his debts.

It is frankly admitted by counsel that one purpose in seeking to have the law construed as imposing a direct liability against the estate of the father, is, so that compensation for the care of the son since 1902 may be collected from the father's estate, while the estate in the hands of the guardian of the son shall be reserved to meet any expense the state may incur for the future care of the son. It is unnecessary to determine whether the estate of the father of an adult son is liable for the maintenance of that son in a state hospital, since it is apparent the statute contemplates that the estate of the insane person shall be primarily liable for his care and treatment; and since it is conceded that the estate of James D. Johnston, which consists of his share of his deceased father's estate, is abundantly able to pay any claim the state may have against him, the judgment of the district court must be affirmed.

The judgment is affirmed.