[No. 28480.   Department One.   October 20, 1941.]

*In the Matter of the Estates of* ROBERT A. MCDONALD *and* ANNIE MARIE MCDONALD, *Deceased.*

THE STATE OF WASHINGTON, *Respondent,* v. LUCY WILLIS, *as Administratrix, Appellant.*[1]

[1]Reported in 118 P. (2d) 165.

Chas. L. Westcott, for appellant.

Thor C. Tollefson, G. E. Peterson, The Attorney General, and Shirley R. Marsh, Assistant, for respondent.

MAIN, J.—The question for decision in this case is whether a finding, in an order committing an insane person to the asylum, to the effect that he had no estate or any relatives able to pay the costs of his care and maintenance, is binding upon the state, which was not a party to the proceeding and had no notice thereof.

July 18, 1938, Robert A. McDonald was adjudged insane and committed to the Western State Hospital for the Insane. He remained there until his death, which occurred March 23, 1941. At the time he was adjudged insane, the superior court made a finding that the insane person had no estate, and that his son and daughter were financially unable to pay his expenses. The order of commitment recited:

"Now Therefore it is hereby ordered and adjudged that neither the estate nor any relative of such insane person is able to pay the costs of the latter's care and maintenance."

At the time of the commitment, the insane person and his wife were the owners of a home in the city of Tacoma, valued at approximately two thousand dollars. This home was destroyed by fire in August, 1940, and was insured for fifteen hundred dollars, which the insurer paid.

After the death of the insane, the state filed a claim with the administratrix of his estate in the sum of $630.05, asking to be reimbursed for the cost of his care and maintenance, which claim was rejected by the administratrix. The superior court entered an order allowing the claim in full, and from this order the administratrix appeals.

Rem. Rev. Stat., § 6930 [P. C. § 2827], provides that every insane person, his estate, or relatives mentioned in the statute, shall pay for his care and maintenance the sum of $4.50 a week. It is made the duty of the superintendent of the asylum, when a person is admitted, to determine whether or not such insane person is violently insane and dangerous to life and property. If the superintendent does determine that the person committed is violently insane and dangerous to life and property, and he has no estate, and the relatives mentioned in the statute are without financial ability to pay the cost of his care and maintenance, then such cost will be borne by "the state of Washington."

The appellant contends that the order of commitment, not having been modified, is binding upon the state. The respondent contends that, since the state was not a party to that proceeding and had no notice thereof, it is not bound by the order.

This presents the question as to whether the order of commitment in this case is *res judicata* as against the state. In the case of *Northern Pac. R. Co. v. Snohomish County*, 101 Wash. 686, 172 Pac. 878, it was said:

"To make a judgment *res judicata* in a subsequent action there must be a concurrence of identity in four respects: (1) of subject matter; (2) of cause of action; (3) of persons and parties; and (4) in the quality of the persons for or against whom the claim is made."

Many other cases to the same effect might be cited, but the rule is so firmly written in the law of this state that the assembling of additional cases is not necessary.

■ As above pointed out, the state was not a party to the commitment proceeding and had no notice thereof. From this it necessarily follows that the order is not *res judicata* as against it. The only person in the employment of the state, so far as the record shows, that knew of the commitment was the superintendent of the asylum.

The purpose of the judicial inquiry into the financial condition of the insane or his relatives is to advise the superintendent of the hospital of the situation, and is not to determine the right of the state to reimbursement for the expenses incurred.

In the case of *Kaiser v. State,* 80 Kan. 364, 102 Pac. 454, 24 L. R. A. (N. S.) 295, it was said:

"The record of the hearing which resulted in Freitag's being adjudged insane recites a finding by the probate court that he was without sufficient means for his support and an order that his maintenance should be at the expense of the state, and the warrant issued in the case directed the steward of the asylum so to maintain him. The administrator contends that this shows an adjudication against the right of the state asserted in this proceeding. We think, however, that the purpose of the judicial inquiry into the financial condition of the insane person is rather to advise the public officers of his situation in that regard than to determine the right of the state to reimbursement for the expense incurred in his behalf. At all events nothing is decided by it except his circumstances for the time being. Although he may be destitute when committed, any after-acquired property can be applied to his support; and although he may then have abundant means, their subsequent loss will cast the cost of his maintenance upon the state. Whether a claim exists against his estate for his care at the hospital at any given time depends upon whether at that time he had sufficient property

for the purpose. This is a question of fact upon which the state is not concluded by the finding made at the time of his commitment."

The cases of *State v. Bryan,* 105 Kan. 483, 185 Pac. 25; *Directors of Insane Asylum v. Boyd,* 37 N. M. 36, 17 P. (2d) 358; and *In re Yturburru's Estate,* 134 Cal. 567, 66 Pac. 729, are to the same effect.

In the case of *Schroer v. Central Kentucky Asylum for the Insane,* 113 Ky. 288, 68 S. W. 150, after referring to a statute of that state relative to the order of commitment, it was said:

"This, we think, means only that upon such finding the superintendent is required to receive the patient without payment in advance. An examination of these statutes, and of others, indicates that they are all regulations for the purpose of protecting the State against imposition. They are intended to prevent persons who are not lunatics, or persons who, though lunatics, have sufficient property for their support, being supported at the expense of the State. This inquest, in so far as it relates to the property of the lunatic, is in no sense an adjudication between the lunatic and the State, except in so far as it requires his admission into the asylum."

The appellant calls our attention to the case of *Nodaway County v. Williams,* 199 S. W. (Mo.) 224; but that case has no application to the facts we are now considering. The question of whether the state, not being a party to the insanity proceeding and having no notice thereof, is bound by the order of commitment, was not involved in that case, and no mention is made in the opinion of such a situation.

The order appealed from is affirmed.

ROBINSON, C. J., MILLARD, STEINERT, and DRIVER, JJ., concur.