No. 39,353

In the Matter of the Estate of Augusta Carlson, Incompetent. The State Department of Social Welfare of Kansas, *Appellant*, v. Albin Carlson, Guardian, *Appellee*.

(270 P. 2d 200)

Opinion filed May 8, 1954.

*Charles V. Hamm*, of Topeka, argued the cause, and *Harold R. Fatzer*, attorney general, *Paul E. Wilson*, assistant attorney general, *Hart Workman*, and *James S. Engle*, all of Topeka, were with him on the briefs for the appellant.

*Lawrence O. Bengtson*, of Salina, argued the cause, and was on the briefs for the appellee.

The opinion of the court was delivered by

Harvey, C. J.: This appeal is from an order of the district court

denying the claim of the State Department of Social Welfare of Kansas against the estate of Augusta Carlson in which Albin Carlson had been appointed guardian of her estate.

On March 17, 1953, the State Department of Social Welfare filed its petition in the probate court of Saline county in the estate of Augusta Carlson, incompetent, Albin Carlson, guardian, in which it presented its demand against the estate in the sum of $5,445.29 on account of the claim of the state of Kansas for the maintenance, care and treatment of Augusta Carlson, incompetent, for a period of time from March 19, 1934, to June 30, 1951, at $5 a week, and from July 1, 1951, to December 31, 1952, at $12 a week as shown by its verified claim attached to its petition. As the duly appointed and acting guardian of the estate of Augusta Carlson, Albin Carlson filed his written defense in which he alleged that the money in his hands was a part of the proceeds of selling her homestead and it was therefore exempt and that on March 19, 1934, when Augusta Carlson had been declared incompetent and committed to the state hospital the probate court had made an investigation and found that neither she nor her husband had any funds with which to pay for her care and that she should be admitted to such hospital as a state patient which order had not been rescinded, for which reason the state could not collect for that purpose for her care and maintenance.

John Carlson filed a written defense to the claim in which he alleged that he was the husband of Augusta Carlson on March 19, 1934, which marriage relationship still exists; that he was the record and fee simple owner of the described 80 acres of land upon which he and his wife resided as their homestead and that he continued to occupy the same as his homestead until it was condemned by eminent domain proceedings by the United States of America in the District Court of the United States for the District of Kansas by which action the United States acquired title to said property; that at the time of the eminent domain proceedings the guardian of the estate of Augusta Carlson joined in the conveyance inasmuch as Augusta Carlson had an inchoate interest in the real estate; that the guardian of the estate of Augusta Carlson, an incompetent person, had only an inchoate interest in the funds in his possession which said interest is subject to being divested in the event Augusta Carlson predeceases her husband, John Carlson, who is now the rightful owner of the funds in the hands of the guardian of Augusta Carlson; that the funds in the hands of the guardian of Augusta Carl-

son are proceeds from the sale of the previously described property, and that the funds are exempt as homestead property from the payment of all debts as provided by G. S. 1949, 60-3501. The prayer was that the petition for allowance of demand filed by the State Department of Social Welfare of Kansas be denied and in the event that said claim is allowed that the court make an order prohibiting the guardian from disbursing the funds in his hands inasmuch as Augusta Carlson had only an inchoate interest in such funds and that this deponent is the rightful owner thereof. The claim was denied by the probate court. The claimant appealed to the district court of Saline county where the facts were agreed upon by the attorneys for the State Department of Social Welfare and the attorney for Augusta Carlson's guardian and for John Carlson, which read:

"That Augusta Carlson was on March 19, 1934, declared incompetent by the probate court of Saline County, Kansas; and that the said Augusta Carlson has never been declared competent and is as of this time still an incompetent person.

"That Augusta Carlson was on March 19, 1934, admitted to the Larned State Hospital for care and treatment and is still a patient at the Larned State Hospital.

"That on March 19, 1934, and at all times since that date, the said Augusta Carlson was, and still is, the wife of John Carlson.

"That at the time of the commitment of Augusta Carlson, Incompetent, it was necessary for the probate court to include in its application to the State Board of Administration, a financial statement, a copy of which is attached hereto, and marked Exhibit 'A'; that there have been no further findings or orders of the probate court relative to this financial statement.

"That on March 19, 1934, said Augusta Carlson was residing with her husband John Carlson on the following described premises, to wit:

"The South Half (S½) of the Southeast One-fourth (SE¼) Section Thirty-three (33), Township Fourteen (14), Range Three (3) West of Sixth (6) principal meridian, Saline County, Kansas.

"and that the same was her homestead when declared incompetent.

"That by civil action No. 4703 in the district court of the United States for the District of Kansas, First Division, the premises described in paragraph five (5) were made subject to condemnation proceedings under the authority of eminent domain by the United States of America; that after the condemnation proceedings were commenced that the owner of the premises, John Carlson, and the guardian of Augusta Carlson entered into voluntary conveyance of the above property to the United States of America; and that the condemnation proceedings were dismissed as to the above captioned property; that the office of the Register of Deeds of Saline County, Kansas, shows that on September 19, 1942, John Carlson and Albin Carlson, as guardian of Augusta Carlson, executed a deed to the United States of America covering the above captioned property.

"That Albin Carlson was appointed guardian of the estate of said Augusta Carlson by order of the probate court of Saline County Kansas.

"That the total consideration received for the sale of this property was Eight Thousand ($8,000) Dollars for the premises and One Thousand and Seventy Three ($1,073) Dollars for the growing crops; that the guardian has in his possession four thousand one hundred fifty ($4,150) Dollars, the same being one-half (½) of the proceeds of the sale of the land."

In the district court after argument by counsel and due consideration the court made conclusions of fact which embodied the agreed statement of facts, somewhat extended, and also made the following conclusions of law:

"Inasmuch as said condemnation proceedings were wholly abandoned and dismissed by the United States insofar as the real estate here involved is concerned, there has been no taking of said real estate by the United States of America under its right of eminent domain.

"The voluntary conveyance of said premises by John Carlson to the United States of America is void as against the admitted right of homestead of Augusta Carlson, Incompetent.

"The conveyance to the United States of America by Albin Carlson as guardian of the estate of Augusta Carlson, Incompetent, purporting to convey said Incompetent's right, title and interest in said real estate, which real estate was in fact her homestead, was and is wholly void, contrary to law and contrary to the provisions of the Constitution of the State of Kansas; and that such conveyance does not divest said Augusta Carlson, Incompetent, of her right of homestead in and to said described real estate.

"There have been no joint alienation of said homestead and as against the right of homestead of Augusta Carlson, Incompetent said attempted alienation by the husband and guardian is void and of no legal effect.

"While the guardian of the Incompetent would be barred by the Statute of Limitations from maintaining an action to set aside and cancel the deed of conveyance purporting to convey the homestead of the Incompetent, yet the Incompetent herself would, by virtue of existing statute, to wit: Section 60-305, G. S. 1949, have two additional years after the removal, if ever, of her disability, in which to commence such an action.

"If the Statute of Limitations would in any manner preclude the husband from maintaining an action to cancel such purported deed, yet such fact would in no manner affect the Incompetent's right, upon removal of her disability, either to affirm the conveyance of her homestead or to commence an action to cancel the purported conveyance thereof.

"If, upon removal of her disability, the Incompetent affirmed the conveyance, she would nevertheless still be entitled to a reasonable opportunity thereafter to reinvest said funds in another homestead.

"There is no presumption of law that the disability of the Incompetent always will continue nor that she will never be restored to competency.

"It is not within the power of the court, under the circumstances shown to exist and in view of the provisions of Article Fifteen Section Nine of the state Constitution of the state of Kansas either to declare there has been a

joint alienation of this homestead or that the portion of the proceeds of the attempted sale now in the hands of the guardian are subject to taking by the State Department of Social Welfare under forced process.

"There is no analogy between the cases from other states cited by the claimant and which involve the rights of such other states to subject to the payment of state claims funds of a veteran which by federal law are made exempt, and the situation which obtains in the case at bar and which involves the constitutional right of homestead of the Incompetent.

"The funds amounting to $4,150.00 now in the hands of said guardian do not accrue from or through any condemnation by the United States under its right of eminent domain, in which manner of proceeding the value of Augusta Carlson's right of homestead could have been appraised and judicially determined, and she compensated therefor; on the other hand they accrue from an attempted sale and conveyance of her homestead right by her husband and guardian which sale and conveyance is as to her wholly void, illegal and of no effect.

"There is no evidence before the Court that Augusta Carlson, Incompetent, owns or is possessed of any assets or estate. Her financial condition is unchanged since her admission to the Larned State Hospital as a state patient on March 19, 1934. Inasmuch as she has never had and does not now have any estate the costs of her maintenance, as between herself and the State Department of Social Welfare, must be borne by the latter.

"The burden of proof herein is upon the State Department of Social Welfare and it has not sustained such burden.

"Judgment herein is rendered against the State Department of Public Welfare for the costs hereof including the costs of appeal."

To these conclusions of law the court attached a note as to how the United States might proceed to perfect its title to the 80-acre tract of land purchased.

In harmony with its conclusions of law the court denied the claim of the State Department of Social Welfare. This appeal followed.

We think the trial court was too much concerned with the title of the property purchased by the United States. It was not a party to this action. Before its title to real estate is held bad it should be a party to an action where that question is properly put in issue.

We think the contention of Albin Carlson, guardian of the estate of Augusta Carlson, to the effect that when she was pronounced incompetent the court found she had no money to pay for her care and maintenance and that she should be placed in the state hospital at state expense, which order was never revoked, prohibited the state from collecting anything from her estate now, is not well taken. In *The State v. Bryan,* 105 Kan. 483, 185 Pac. 25, it was held:

"A judgment and finding of the probate court in 1902, at the time an insane person was committed to the state hospital, to the effect that the insane person

had no estate, and imposing the cost and expense of his support upon the state, is construed merely as a determination of the financial status of the insane person at that time, and as meaning that so long as the status remained the same his support should be charged to the state."

On behalf of John Carlson it is argued that Augusta Carlson was not entitled to anything out of the sale of the homestead property for the reason that the title to that real property was in his name; that his wife had nothing but an inchoate interest in it, and that none of it should have been given to her guardian in the first place. This argument is of no consequence now. He is not suing his wife's guardian to recover this money. If he gave her $4,150 out of the sale of the 80-acre tract of land, or out of any other fund, it became her separate property and so remains as such in the possession of her guardian.

We see but two questions in this case. First, whether the Department of Social Welfare has an existing claim against the estate of Augusta Carlson; and, second, if so, can the funds of her estate now in the hands of Albin Carlson, guardian, be used to pay the claim.

The statutes relating to who should pay the cost of maintenance of one committed to one of our state hospitals at the time Augusta Carlson was committed are §§ 39-231 and 39-233 of our revised statutes of 1923. They read:

"The expense attending the support, care and safe-keeping of such person shall be paid by the guardian out of his estate, or by any person who by law is bound to provide for and support such person, or the same shall be paid out of the county treasury." (39-231.)

"The following relatives shall be bound by law to provide for and support the persons referred to in sections 31 and 32 of this act: The husband for the wife and the wife for the husband, the parent for his or her children, and the children for their parents." (39-233.)

Our present statute, G. S. 1949, 59-2006, though worded differently is to the same legal effect. Under either, the estate of a person committed to a state hospital is primarily liable for the maintenance and care of such person, and spouses, parents and children are secondarily liable. See, *In re Estate of Colclazier,* 157 Kan. 125, 139 P. 2d 152.

We think it clear that the State Department of Social Welfare of Kansas has a valid claim against Augusta Carlson and any estate she has that is subject to the payment of claims.

The next question is whether the sum due the state may be collected from the estate of Augusta Carlson now in the hands of Albin

Carlson, guardian of her estate. The guardian and also the husband of Augusta Carlson contend that this money is exempt being the proceeds of a homestead. It does not appear that this claim was raised at the time of the appointment of a guardian, or at any time prior to the time defenses were filed to the state's claim here under consideration. A somewhat similar claim was raised in Smith v. Gore, 23 Kan. 488, where it was held:

"Where a person sells his homestead and does not at the time have any intention of using the proceeds thereof in purchasing another homestead, and has no intention of purchasing another homestead immediately with any funds, such proceeds are not exempt from the payment of his debts. Nor can such person, after an action has been brought against him to subject such proceeds to the payment of a debt, render such proceeds exempt from the payment of such debt, by then forming an intention to use such proceeds in procuring another homestead." (Syl. 1.)

And on p. 490 it is said:

"The law does not, in express terms, in any case exempt money or credits, merely because they are proceeds of a homestead. They are exempted only by a sort of equitable fiction drawn from the spirit of the homestead-exemption laws, and adopted for the purpose of enabling persons to change their homesteads when they desire. This sort of exemption, however, is not allowed in several of the states. (Thompson on Homesteads, § 748 to § 751.)"

The rule expressed in the above case has been recognized and followed in subsequent cases. See First National Bank v. Dempsey, 135 Kan. 608, 610, 11 P. 2d 735. The money in the hands of the guardian of the estate of Augusta Carlson cannot be regarded as exempt on the grounds that it is the proceeds from the sale of a homestead. Since the United States government is not a party to this action we are not determining its rights, if any, to such funds.

The result is the judgment of the trial court must be reversed with direction that the trial court enter judgment in harmony with this opinion. It is so ordered.