Clarence N. BEACH, Appellant,

v.

GOVERNMENT OF the DISTRICT OF COLUMBIA, Appellee.

No. 17429.

United States Court of Appeals
District of Columbia Circuit.

Argued May 23, 1963.

Decided July 5, 1963.

10. Newton v. Consolidated Gas Co., 265 U.S. 78, 82, 44 S.Ct. 481, 482, 68 L.Ed. 909 (1924).

Mr. Ford E. Young, Jr., Washington, D. C., for appellant.

Mr. Richard W. Barton, Asst. Corporation Counsel for the District of Columbia, with whom Messrs. Chester H. Gray, Corporation Counsel, Milton D. Korman, Principal Asst. Corporation Counsel, and Hubert B. Pair, Asst. Corporation Counsel, were on the brief, for appellee.

Before BAZELON, Chief Judge, and FAHY and WASHINGTON, Circuit Judges.

FAHY, Circuit Judge.

This case, initiated by the District of Columbia against appellant, the father of Ellen J. Schuerger, calls for a decision regarding his liability for part of the expense of her maintenance and treatment at St. Elizabeths Hospital where she resides after commitment September 6, 1951, as of unsound mind. Appellant, who had no part in the commitment proceedings, has apparently had little contact with his daughter since 1935. In that year she was of age, left home and became twice married and twice divorced. She took her present name from the later of the marriages.

The case was instituted by a petition followed by a citation pursuant to 21 D.C.Code § 318, set forth in the margin.[1]

---

1. "§ 21–318. Liability of relatives for costs of maintenance and treatment.

"The father, mother, husband, wife, and adult children of an insane person, if of sufficient ability, and the committee or guardian of his or her person and estate, if his or her estate is sufficient for the purpose, shall pay the cost to the District of Columbia of his or her maintenance, including treatment in Saint Elizabeths Hospital or in any other hospital to which the insane person may be committed. It shall be the further duty of said commission, to examine under oath, the father, mother, husband, wife, adult children, and committee, if any, of any alleged insane person whenever such relatives live within the District of Columbia, and to ascertain the ability of such relatives or committee, if any, to maintain or contribute toward the maintenance of such alleged insane person: *Provided*, That in no case shall said relatives or committee be required to pay more than the actual cost to the District of Columbia of maintenance of such alleged insane person.

"If any person hereinabove made liable for the maintenance of an insane person shall fail so to provide or pay for such maintenance, the court shall issue to such person a citation to show cause why he should not be adjudged to pay a portion or all of the expenses of maintenance of such patient. The citation shall be served at least ten days before the hearing thereon. If, upon such hearing, it shall appear to the court that the insane person has not sufficient estate out of which his maintenance may properly be fully met and that he has relatives of the degrees hereinabove mentioned who are parties to the proceedings, and who are able to contribute thereto, the court may make an order requiring payment by such relatives of such sum or sums as it may find they are reasonably able to pay and as may be necessary to provide for the maintenance of such insane person. Said

Appellant answered and there was a trial in the District Court as in equity. The court held that appellant was liable for $75.00 per month toward the expense of his daughter's maintenance. The ensuing judgment was for $8,700, computed at $75.00 per month from August 5, 1952,[2] through May 5, 1962, and also required payment of $75.00 per month beginning with May, 1962, and continuing until the patient's discharge or the further order of the court.

Appellant's basic challenge to the judgment is that it deprives him of his property without due process of law.[3] He contends that he cannot be required to contribute to the maintenance of a daughter whose incapacity and need for public treatment and support arose after attainment of her majority.

Predecessor statutes have been enforced in this jurisdiction insofar as they imposed liability upon the estate of an incompetent for the costs of maintenance. Hart v. Commissioners, 81 U.S.App.D.C. 154, 155 F.2d 877 (1946); Fitzhugh v. District of Columbia, 71 App.D.C. 290, 109 F.2d 837 (1940); Baker v. District of Columbia, 39 App.D.C. 42 (1912). While these decisions may arguably be said to assume the validity of such a statute they do not discuss the constitutionality of imposing liability upon relatives. Since the relative involved in the present case is the father we limit our decision to one who bears that relationship to the incompetent.

State courts have upheld statutes requiring contribution by relatives more distantly related by consanguinity than a father. The legislative authority of Congress with respect to the District of Columbia is comparable to the police power of a state legislature. Lansburgh v. District of Columbia, 11 App.D.C. 512 (1897). State court decisions accordingly are persuasive of the validity of our statute. The subject is treated somewhat fully in People v. Hill, 163 Ill. 186, 46 N.E. 796 (1896), where it is said:

"It can hardly be said that there is no moral duty whatever imposed upon a man, who has sufficient financial ability consistently with his duty to himself and to others, to supply the necessaries of life to a brother or sister who is unable to earn a livelihood in consequence of bodily infirmity, idiocy, lunacy, or other unavoidable cause, in cases where such brother or sister did not become a pauper from intemperance or other bad conduct. This being so, our statute stands upon the same footing, so far as legal principle is involved, that the statute of Elizabeth stands upon.[4] The support of the poor is a public duty, and, in case of the default of him upon whom is imposed a prior duty to afford such support, the cost of providing the same will be upon the body politic. The object of both the statute of Elizabeth and of our existing statute is to protect the

---

order shall require the payment of such sums to the Board of Public Welfare annually, semiannually, or quarterly as the court may direct. It shall be the duty of the board to collect the said sums due under this section, and to turn the same into the treasury of the United States to the credit of the District of Columbia. Any such order may be enforced against any property of the insane person or of the person liable or undertaking to maintain him in the same way as if it were an order for temporary alimony in a divorce case. (Aug. 9, 1939, 53 Stat. 1298, ch. 620, § 9.)"

2. It was found that the patient's own estate was unable to bear any of the expense after August 5, 1952.

3. Appellant was personally served, answered, and the matter was heard in a manner which raises no issue of procedural due process. See Guthrie County v. Conrad, 133 Iowa 171, 110 N.W. 454 (1907).

4. In an earlier portion of the opinion the court had pointed out that the common law had not imposed upon a parent a duty to support his child after the latter's maturity, to remedy which "defect," along with others, the statute of 43 Eliz. c. 2 § 7 was passed, enacting *inter alia* that the father of a lame, blind or impotent person, "being of sufficient ability" shall "relieve and maintain every such poor person."

public from loss occasioned by neglect of a moral or natural duty imposed on individuals, and to do this by transforming the imperfect moral duty into a statutory and legal liability." 46 N.E. at 798.

In State v. Bateman, 110 Kan. 546, 204 P. 682, 683 (1922), it is said such a statute "merely recognizes the imperfect moral obligation, and makes of it a legal one." And see In re Idleman's Commitment, 146 Or. 13, 27 P.2d 305 (1933); Commonwealth v. Zommick, 362 Pa. 299, 66 A.2d 237 (1949). In relying upon these decisions, illustrative of rather widespread approval of comparable state legislation, we do not suggest any derogation of public responsibility for these unfortunates. St. Elizabeths itself is ample evidence of the assumption of such responsibility. But when the law turns also to the father for help, if he is able to give it, when the estate of the incompetent is insufficient, it does so only to supplement the public responsibility. Placing a secondary obligation upon the father finds its validity in the reasonableness of attaching legal significance to the natural bonds of consanguinity. It is not unreasonable, it is not a denial of due process, for the law to attach an enforceable obligation to the moral obligation which exists in the usual family relationship of father and daughter. Recognition by statute of this obligation is not at odds with recognition that the public in many cases is called upon to supply total support for such individuals, whose faculties or estates are unable to do so.

■ The magnitude of the liability is determined according to the father's ability, and this must be ascertained upon consideration of all the circumstances of his life, including his other obligations, so as not to cause undue hardship. As thus construed and applied to a father we think the statute is not violative of due process of law.

■ Appellant also contends that he lives in Maryland and that the statute applies only to a relative who lives within the District of Columbia. The provision he relies upon imposes upon the Mental Health Commission the duty to examine the relatives whenever they "live within the District of Columbia," to ascertain their ability to maintain or contribute to the maintenance of the person committed. We do not construe this phraseology as a restriction upon the liability referred to in the first sentence of the statute. While the statute falls short of a model of clarity and precision, we think sensibly construed it creates a liability which is not limited to a father who lives in the District of Columbia, though only a person who does live here may ordinarily be available for examination by the Mental Health Commission.

■ As to the amount appellant is required to pay, the finding of the District Court that "[t]he portion of the cost of maintenance of his daughter at the hospital which the Respondent is financially able to pay is the sum of $75.00 per month"[5] is amply supported by the evidence. The evidence showed the father has a total income of approximately $5,900 per annum. His assets include unencumbered real estate of a value of about $30,000, stock valued at between $6,000 and $7,000, and bank accounts of some $12,000. Included in his income is a federal Civil Service annuity of $2,628, a Veteran's pension of $1,219.08 arising from his status as a veteran of the Spanish-American War, dividends on stock, and rentals of real estate. We find no error in the fixing of appellant's liability of $75.00 per month from the time these proceedings were initiated.[6]

5. While this finding is not in the precise language of the statute it is not objected to on that ground and the conclusion of law entered at the same time was in terms of "ability to pay" which brings the court's action within the intendment of the statute.

6. Appellant contends that since part of his income is from Veteran's Pension, 38 U.S.C. § 3101(a) protects him entirely from liability. Other considerations aside, it is sufficient answer to note that the amount he is required to pay may be fully satisfied without encroachment upon his pension.

This brings us to the final question whether the $8,700 portion of the judgment should also be affirmed. This amount is the multiple of $75.00 per month from August 5, 1952, through May 5, 1962. The proceedings against appellant, however, were not instituted until March, 1961. It is true that a claim by the District for maintenance against the estate of an insane person committed to St. Elizabeths while a resident of the District of Columbia has been held not barred by a statute of limitations. Hart v. Commissioners, supra. But we think the question before us is one of statutory construction as to when the liability of the father began and not a question of limitations or laches.

The statute provides that the estate is to pay the costs of maintenance if it "is sufficient for the purpose"; but in the case of a father he shall pay the cost of maintenance "if of sufficient ability." As to both father and committee the Mental Health Commission has the duty of examining into the situation "to ascertain the ability" of the relative and committee, if any, of the "alleged insane person," thus contemplating an inquiry at the time of the proceedings before the Commission to determine the mental condition of the person.

The provisions referred to leave unclear the time this father's liability arose after the child had been committed, was being maintained by the public, and her estate for a time had borne the expense. He is not a person of such large means that it would be equitable to fix his obligation at the time the estate of the incompetent was exhausted without any suggestion from the authorities that he was expected to contribute. In the case of one situated as appellant the extent of his obligation, and when it begins, are matters of judgment about which reasonable differences of opinion may be held by the persons concerned; the situation is indefinite and might well be termed inchoate. The statute appears to contemplate that a determination with respect to these matters shall be the result of an inquiry begun at the time of the proceedings, when responsibility is first assumed by the public. But except possibly as to the daughter's estate no inquiry appears to have been made in this case at that time. If not previously made, inquiry as to the father's ability to contribute should follow exhaustion of recourse to the estate, if the father is to be looked to for help. And, unless his situation is one in which it appears equitable to place liability upon him at that time regardless of all else, as might be if he were a person of large means, some reason to believe he is looked to should be brought home to him before it can be said he is in default. Unless so construed the obligation of a father situated as was appellant, against whom no claim had been asserted or indicated over a long period of time, might well lead to the hardship the statute seeks to avoid. It is of significance in this connection that the means set out for determining a father's contribution are equitable in nature.

■ The $75.00 per month from the initiation of the present proceedings is well justified factually, as we have said, and, in addition, comes within the statutory plan. But the requirement of $75.00 per month should be made retroactive only from the time the District authorities took such steps with respect to the father as amounted to a demand upon him for contribution.

The judgment will be affirmed insofar as it requires payment of $75.00 per month from the date the proceedings against appellant were instituted. As to any amount prior thereto the judgment is vacated but may be reinstated in an amount equal to $75.00 per month for a period determined as above indicated, to which end the case will be remanded to the District Court.

It is so ordered.