**James L. HARRIS, Conservator of the Estate of Bertha Kern Clark, Mother of John W. Clark, Appellant,**

**v.**

**DISTRICT OF COLUMBIA, Appellee.**

**No. 19491.**

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 7, 1965.

Decided March 4, 1966.

594

Mr. Marshall P. Johnson, Washington, D. C., with whom Mr. Edwin Shelton, Washington, D. C., was on the brief, for appellant.

Mr. Richard W. Barton, Asst. Corp. Counsel for District of Columbia, with whom Messrs. Milton D. Korman, Acting Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for appellee.

Before Bazelon, Chief Judge, and Danaher and Burger, Circuit Judges.

BURGER, Circuit Judge:

This is an appeal from a District Court judgment against the estate of Bertha Kern Clark, of which Appellant is conservator, in the amount of $36,000 for the expenses of maintaining Mrs. Clark's mentally incompetent child in St. Elizabeths Hospital for some seventeen years prior to the date of the judgment.[1] The pertinent statute provides:

The father, mother, husband, wife, and adult children of an insane person, if of sufficient ability, and the committee or guardian of his or her person and estate, if his or her estate is sufficient for the purpose, shall pay the cost to the District of Columbia of his or her maintenance, including treatment in Saint Elizabeths Hospital or in any other hospital to which the insane person may be committed. It shall be the further duty of [the Commission on Mental Health] * * * to examine under oath, the father, mother, husband, wife, adult children, and committee, if any, of any alleged insane person whenever such relatives live within the District of Columbia, and to ascertain the ability of such relatives or committee, if any, to maintain or contribute toward the maintenance of such alleged insane person. * * *

If any person hereinabove made liable for the maintenance of an insane person shall fail so to provide or pay for such maintenance, the court shall issue to such person a citation to show cause why he should not be adjudged to pay a portion or all of the expenses of maintenance of such patient. * * If, upon * * * hearing, it shall appear to the court that the insane person has not sufficient estate out of which his maintenance may properly be fully met and that he has relatives of the degrees hereinabove mentioned who are parties to the proceedings, and who are able to contribute thereto, the court may make an order requiring payment by such relatives of such sum or sums as it may find they are reasonably able to pay and as may be necessary to provide for the maintenance of such insane person.[2]

Appellant claims that the judgment is illegal because neither she nor her husband was ever given notice that they were li-

---

1. The court also ordered Appellant to pay one hundred dollars monthly toward future maintenance expenses; Appellant does not challenge this portion of the judgment.

2. Act of August 9, 1939, § 9, 53 Stat. 1298, D.C.Code § 21–318 (1961). This section was replaced by District of Columbia Hospitalization of the Mentally Ill Act § 7(g), 78 Stat. 949 (1964), D.C.Code § 21–356(g) (Supp. IV, 1965), which in turn was replaced by current § 21–586 (Supp. V, 1966), which took effect January 1, 1966. The three versions differ only in phraseology. The Act of September 14, 1965, §§ 4, 8, 79 Stat. 779, 780, provides that liability incurred and proceedings commenced under the earlier statutes shall not be affected by their repeal.

able for more than the thirty dollars monthly which they had been paying, and because the Mental Health Commission never held a hearing and determined that they were in fact able to pay more.

John W. Clark, son of Francis J. Clark and Bertha Kern Clark, was committed to St. Elizabeths Hospital by order of court, upon recommendation of the Mental Health Commission, in August 1938 at the age of 14. At that time the Commission held a hearing, attended by Mr. and Mrs. Clark, to determine the financial ability of next of kin to pay some or all of the expenses of maintaining the son in St. Elizabeths. The Commission recommended and the court ordered that the father pay thirty dollars a month, until further order of the court. Mr. Clark complied with this order until his death in 1958, and Mrs. Clark made the payments from then until March 1965, when James L. Harris was appointed conservator of her estate by reason of her physical condition.

On the date that Harris was appointed conservator, the District Court upon petition of the District of Columbia Corporation Counsel issued a citation to show cause why Harris should not be adjudged to pay the past expenses of the son's maintenance, in excess of the thirty dollars monthly, out of Mrs. Clark's estate. The subsequent hearing disclosed that Mrs. Clark had an estate of $118,000, with an income of $5740 annually, but that she had costs of care and maintenance in a nursing home of about $450 monthly. After hearing the evidence, the District Court entered judgment in favor of the District of Columbia for the full $36,000 demanded but with a stay of execution on the judgment until the death of Mrs. Clark, or until further order of the court, whichever occurs first, and with provision that no interest shall accrue on the amount of the judgment. The District Court's order thus does not operate to reduce Mrs. Clark's estate or spendable income during her lifetime.

Appellant's contentions are fourfold: first he claims that the statute does not authorize a "retroactive" order requiring payment for expenses incurred before the determination that the relative is able to pay. Second, he says that even if a retroactive order may be issued, increasing the amount of payment where a relative has previously been ordered to pay part of the expenses, such an order may not be made against a relative who has never before been called upon to pay any of the expenses. Third, he argues that, even if an order to pay expenses previously incurred is generally permissible, such an order must be based upon an affirmative finding that the relative ordered to pay was "of sufficient ability" at the time the expenses accrued. Finally, Appellant makes the procedural claim that no judgment for expenses can be issued by the court unless the Mental Health Commission first establishes the relative's financial capacity to pay, even if such a judgment can require payment for expenses which accrued before the Commission's determination was made.

The resolution of these issues must be based, as both parties recognize, largely on the principles underlying our decision in Beach v. Government of District of Columbia, 116 U.S.App.D.C. 68, 320 F.2d 790 (1963). That case was an appeal from a judgment requiring a father to repay to the District of Columbia expenses previously incurred to maintain his adult daughter in St. Elizabeths. The daughter had left home in 1935, been twice married and divorced, then committed to St. Elizabeths in 1951. The father had taken no part in the commitment proceedings and had "apparently had little contact with his daughter since 1935." The Mental Health Commission held no inquiry into the father's ability to pay maintenance expenses at the time of commitment or later, but proceedings were instituted by the District of Columbia in March 1961 to recover the back maintenance expenses. At that time the father had a total income of approximately $5900 yearly, mostly from pensions, and assets of less than $50,000. In re-

versing the District Court's judgment against him for $8700, this court said:

> The [statutory] provisions * * * leave unclear the time this father's liability arose after the child had been committed, was being maintained by the public, and her estate for a time had borne the expense. He is not a person of such large means that it would be equitable to fix his obligation at the time the estate of the incompetent was exhausted without any suggestion from the authorities that he was expected to contribute.

The holding was anchored to the equities there in order to avoid "the hardship the statute seeks to avoid."

■■ Thus, under *Beach* the question of the liability of a relative of a mentally ill person for past maintenance expenses is not subject to a hard and fast rule, but is to be resolved according to the equities. In the present case we are confronted with a mother who, unlike the parent in *Beach*, participated in the proceedings to commit her minor son, including the Mental Health Commission's hearing to determine the ability of her husband to contribute toward their son's maintenance. Therefore they had notice of their obligation to contribute according to their ability, although the amount fixed at that time was only thirty dollars a month. Appellant conservator does not contend that the present judgment is unreasonable or beyond the means of the mother's estate or resources.[3] In these circumstances it was not inequitable for the District Court to require that her estate repay upon her death, without interest, the maintenance expenses of her son, which the public has borne for many years while she and her husband were building up a sizable estate.

When it is clearly no hardship on her to repay these benefits, she should not be able to take advantage of the District of Columbia's seemingly inexcusable, or at least inadvertent, failure to require from the parents a periodic accounting, or a statement of their financial position from time to time to determine whether their ability to pay a larger portion of the maintenance expenses had altered since 1938. Moreover, we note that the record shows that the mother's estate has been receiving eighty dollars a month in Social Security benefits for the support of the child while paying only thirty dollars of this amount to the District of Columbia for maintenance at St. Elizabeths.

■ Moreover we cannot accept Appellant's argument that an order requiring a relative to pay past expenses is impermissible unless the relative was able to pay that amount at the time the expenses were incurred. Appellant argues that under our holdings a relative of a mentally ill person committed to St. Elizabeths cannot rest secure in the belief that he is contributing all he will ever be called upon to pay toward maintenance. To a degree that is correct, but consideration for such assurance to the relative does not outweigh the important equitable and underlying statutory obligation to pay the expenses incurred for the maintenance of one's mentally ill child hospitalized at the request of the parents. If the obligation cannot be satisfied at the time it arises, equity and the statute demand that it be satisfied when and if the relative becomes "of sufficient ability." The disposition, as we have suggested, must always turn chiefly on the equities.

■ Appellant's final contention, that a judgment requiring payment of maintenance expenses cannot be entered against any relative unless the Mental Health Commission has first determined that person's ability to pay, also lacks merit. The Commission is composed almost entirely of psychiatrists; its expertise is in evaluating mental illness and suitability of persons for commitment, not financial and equitable issues.

---

3. Appellant's counsel asserted in oral argument here that the trial judge had denied him an opportunity to show certain equities in his favor. Since the Record shows no proffer of such evidence, that argument is both untimely and improper.

It is reasonable to require it to make the initial determination of relatives' ability to pay at the time of commitment, for it is then already in session, engaged in a fact-finding hearing on the case of the particular allegedly mentally ill person before it. Presumably in many of these cases the same relatives who may be able to pay the expenses of maintenance will be there to testify regarding the behavior of the person who is the subject of the commitment proceedings. While it is often convenient to make the determination of ability to pay at that juncture, it is not a prerequisite to liability. Congress could hardly have intended that such a specialized body devote its time to redetermining periodically the financial standing of the inmates' relatives. The District Court is far better suited for making such a determination, and it must enter the judgment and order in any event.

▆ Appellant points out that the statute provides for issuance of citations to show cause by the District Court only to persons "hereinabove made liable" and contends that the quoted words refer to persons found by the Commission able to pay. We do not agree. It is far more reasonable to link the quoted words to the first clause in the section, stating that certain close relatives, as well as the Committee or Guardian of the ward's estate, must pay the maintenance expenses if able. The statute makes no reference to the Commission's determination as fixing liability; the Commission is charged merely with "ascertain[ing] the ability of such relatives or committee, if any, to maintain or contribute toward the maintenance of such alleged insane person. * * *"

The judgment of the District Court is Affirmed.

DANAHER, Circuit Judge (dissenting):

My colleagues in their text have quoted the applicable statute. As here pertinent, it clearly provides that a father or mother may be liable for the cost of maintenance of a mentally ill person only if the parent be "of sufficient ability" to meet that charge. The *court* ultimately must make a determination as to the extent of liability. The statute is explicit. If the father or mother shall fail to provide for maintenance of their mentally ill child, "the court shall issue to such person a citation to show cause why he should not be adjudged to pay a portion or all of the expenses of maintenance of such patient."

The record here shows that the court on August 6, 1938 made its determination that the District of Columbia was to pay the expense of the maintenance and treatment of the son "until further order of this Court." The court further determined and ordered that the patient's father, Francis J. Clark, pay the sum of $30 monthly to the Board of Public Welfare "until further order of this Court."

Throughout the lifetime of Francis J. Clark, the patient's father, there was no further order of the court. Until the father's death in 1958, he made payments in accordance with the court order and pursuant to the statute.

The record shows that until the instant proceeding there had been no determination by the *court* concerning the ability of the mother to pay any sum, either in whole or in part, toward the cost of maintenance and treatment of the mentally ill son.

This very proceeding was commenced on March 18, 1965. As the statute directs, a citation was issued to the mother, or her conservator, to show cause if any there be why the estate of Bertha K. Clark should not be adjudged to pay all or a portion of the unreimbursed amount theretofore expended by the District of Columbia for the care and maintenance of the patient. Thus, the judgment and order entered on May 26, 1965, for the first time, constituted a determination resulting in a judgment that the estate of the *mother* should be liable. Not until after hearing in the District Court had the statute been complied with. On-

ly then could it have been "brought home"[1] to her that she was to be charged with an obligation although previously "no claim had been asserted or indicated over a long period of time,"[2] either against the deceased father or the surviving mother. The *Beach* case definitely settled that the means for determining a parent's contribution are equitable in nature. This court there held that when the amount of contribution had been determined, the requirement for payment should be retroactive only to a time as of which the District authorities had taken such steps with respect to the parent as amounted to a demand for contribution. I believe it to be inequitable and not in accordance with the statute that Mrs. Clark's estate should now, retroactively, be made liable for all deficiencies dating back to 1938.

The father had been under order to pay $30 per month continuously or until further order of the court. There had been no such further order. He paid $6,132.-60. After the father died December 8, 1958, the mother without having been adjudged liable, voluntarily kept up payments at the same rate under which the father had been making payments for some twenty years. She contributed $2,-221. Until the instant action the District had not initiated proceedings against her to ascertain if she possessed "sufficient ability" to make larger payments. In my view, compliance with statutory prerequisites should be required.

It appears that this lady is a patient in a nursing home with no prospect of discharge. The cost of her care and maintenance approximates $450 per month and may increase. Obviously no one can predict the extent of her longevity. The District Court has very properly provided that execution of its judgment shall be

withheld during the lifetime of the widowed mother.[3] But that alone does not establish what is "equitable" within the holding of the *Beach* case which required that monthly payments commence only as of the date the statutory proceedings were instituted by the District.

The record shows that in 1965 the cost of the care of the son was $9.87 per day and continues to accrue at that rate.[4] I think the District should have judgment at that rate from March 18, 1965 when the statutory citation to show cause was filed, and not for $36,051.35 related back over a 27-year period. Fair compliance with the requirements of the statute in the determination of ability to pay and that a parent is to be charged with any such obligation should be a prime prerequisite in a decision as to what is "equitable."

I would remand for a redetermination of the amounts for which the mother equitably would now be made liable, computed from March 18, 1965. Against that sum, she would be given credit for the $2,221 she has already paid. Additionally she would be credited at the rate of $100 per month with such payments as she may have made since June 1, 1965.[5]

In argument it was represented that she has been receiving a Social Security allowance of $87 per month, which assertedly had been paid to and received by her expressly for the care of the mentally ill son. For how long a period the mother has been receiving such an allowance does not appear. Quite apart from the mother's obligation as determined pursuant to the *Beach* case holding, *supra*, it would seem that, equitably, the mother should be required to pay over to the District such disability benefits as accrued since the date of the father's death,

1. Breach v. Government of District of Columbia, 116 U.S.App.D.C. 68, 72, 320 F.2d 790, 794 (1963).

2. *Ibid.*

3. The order nevertheless directed the conservator of the mother's estate to pay $100 per month to the District commencing June 1, 1965.

4. In 1958 the rate was $6.75; in 1963 it was $10.71; the annual rates varied between these figures in other years since the date of the father's death.

5. See note 3, *supra*.

on account of the disabled "child" as defined in the Social Security Act. Such amounts run to the disabled person as to one "entitled" thereto as disability insurance benefits.[6] It reasonably may be assumed that the Secretary determined that the interests of the incompetent would be served by payments "for his use and benefit." [7] While, strictly speaking, the funds were not impressed with a trust, we are concerned with what is "equitable," and the District should recover the past payments [8] of Social Security benefits, whatever the total [9] to the extent the mother received them since December 8, 1958, irrespective of the determination of her personal liability under the District Court's order.

An equitably computed account of the mother's obligation on behalf of her mentally ill son should depend upon a record of all such factors. I would remand that the facts may appear.

6. Cf. Savoid v. District of Columbia, 110 U.S.App.D.C. 39, 288 F.2d 851 (1961).

7  42 U.S.C. § 405(j) (1964).

8. 42 U.S.C. § 407 (1964); cf. Celebrezze v. Sparks, 342 F.2d 286, 288, 289 (5 Cir. 1965).

9. Not exceeding the District's charges, of course.