Joseph M. STONE, Executor of the Will
of Elna H. Wharton, Deceased,
Appellant,

v.

Agnes Wharton BREWSTER, Appellee.

No. 20079.

United States Court of Appeals
District of Columbia Circuit.

Argued April 18, 1967.

Decided March 6, 1968.

Mr. Warren Woods, Washington, D. C., for appellant. Mr. Bruce E. Mitchell, Washington, D. C., also entered an appearance for appellant.

Mr. Richard A. Mehler, Washington, D. C., with whom Mr. Lawrence S. Schaffner, Washington, D. C., was on the brief, for appellee.

Before BAZELON, Chief Judge, MCGOWAN and LEVENTHAL, Circuit Judges.

BAZELON, Chief Judge:

By statute before 1962 the Commissioners of the District of Columbia were required to render public assistance to aged or infirm indigents, and were authorized in certain circumstances to seek reimbursement from designated relatives.[1] In the District of Columbia Public Assistance Act of 1962 [2] the authority to sue certain relatives for support payments was extended to the indigent dependents themselves.[3] Mrs. Elna H.

---

1. D.C.Code § 46-211 (1961).

2. 76 Stat. 914 (1962), D.C.Code §§ 3-201 to 3-223 (1967).

3. D.C.Code § 3-218 (1967). Responsible relatives.

(a) The husband, wife, father, mother, or adult child of a recipient of public assistance, or of a person in need thereof, shall, according to his ability to pay, be responsible for the support of such person. Any such recipient of public

Wharton, an 84 year old widow, invoked that provision in 1964 in this suit against her eldest daughter, in the District of Columbia Court of General Sessions. The trial judge found need for assistance [4] but denied recovery on the ground that the daughter had satisfied her statutory obligation by offering to provide care in her own home. Pending appeal to the District of Columbia Court of Appeals, Mrs. Wharton died and her daughter moved for dismissal for mootness against the substituted executor. While the Act did not specify when payments became effective, the court construed it to require support only after final determination of the action.[5] Accordingly the motion was granted. We allowed review because of the importance of the issue in the administration of the Act.

Since the Act is silent on the effective date of support payments we look to the legislative intent. Prior to 1962 liability was imposed only on District residents [6] and only for certain kinds of public assistance. For example, the Commissioner could seek recovery from relatives of blind and aged indigents, but not from relatives of permanently disabled indigents.[7] Moreover, under the earlier statute the indigent was ineligible for public assistance if a financially able relative resided in the District.[8] Consequently if the relative refused assistance the dependent received no support, since he was not empowered to sue and the Commissioners could not proceed against the relative until the dependent had received public assistance. In practice the word of promise to the defendant's ear was often broken to his hope.

The 1962 Act was designed to meet these problems and to provide a more effective administration of public assistance by making "certain relatives responsible for support of needy persons."[9] Thus that Act specifically extended relative responsibility to all categories of indigents and removed the District residence requirement for responsible relatives. In addition, while Congress continued the Commissioners' authority to recover from the responsible relative "the amount of public assistance granted," [10] it authorized recovery by dependents who were recipients of public assistance or *"in need thereof."* [Emphasis supplied.]

Under the present statute the dependent may choose between accepting public assistance, leaving the Commissioners to decide whether a responsible relative should be sued, and directly suing the relative. Having in mind the beneficent nature of the Act and the requirement that the dependent be "in need," we think the dependent must have a reasonable expectation that recovery for his support dates back at least to the commencement of his action. Otherwise his private remedy is not adequate if the law is construed to limit recovery to fu-

assistance or person in need thereof or the Commissioners may bring an action to require such husband, wife, father, mother, or adult child to provide such support and the court shall have the power to make orders requiring such husband, wife, father, mother, or adult child to pay to such recipient of public assistance or to such person in need thereof such sum or sums of money in such installments as the court in its discretion may direct and such orders may be enforced in the same manner as orders for alimony.

4. D.C.Code § 3–201 (1967) defines "public assistance" as " * * * payment in or by money, medical care, remedial care, goods or services to, or for the benefit of, needy persons * * * ."

5. Stone v. Brewster, D.C.App., 218 A.2d 41 (1966).

6. D.C.Code § 46–211 (1961).

7. D.C.Code §§ 46–211, 46–111 (1961).

8. D.C.Code § 46–202 (1961).

9. H.R.Rep. No. 892, 87th Cong., 2d Sess. (1962).

10. D.C.Code § 3–218 (1967).
 (b) The Commissioners shall be empowered on behalf of the District to sue such husband, wife, father, mother, or adult child for the amount of public assistance granted under this chapter or under any Act repealed by this chapter to such recipient or for so much thereof as such husband, wife, father, mother, or adult child is reasonably able to pay.

ture needs. And a reluctant relative might reduce his liability by delaying final judgment, or even escape all liability by keeping the litigation going until the dependent dies.

On the other hand fairness dictates that the relative should have notice of the claim for support. We applied this principle to the Hospitalization of the Mentally Ill Act [11] which is also silent as to the effective date of a relative's liability for costs of maintaining a child in a hospital. And with respect to the same Act, we held in Beach v. Government of District of Columbia [12] that unless the relative was so wealthy that he could be equitably assessed for all assistance previously granted, his liability should date from the time, in that case the commencement of the action, he was aware of the dependent's circumstances. Thus in Harris v. District of Columbia [13] where the parents left large estates we approved the Commissioners' request for retroactive increases in the parents' liability for a child's treatment because they had "notice of their obligation to contribute according to their ability." [14]

In the present case recovery is sought only from the commencement of the action. Hence, we need not consider whether recovery is warranted before that date. Under the circumstances we think that appellee, long aware of her mother's condition, received sufficient notice from this 3–218 action to require recovery from its commencement.

 Appellee argues that even if Mrs. Wharton was entitled to assistance her death abates the action. Since the DCCA dismissed for mootness, it did not consider this issue. We consider it now because it plainly appears that the District of Columbia Survival Act [15] does not require abatement.[16] This broad survival statute was "enacted for the purpose of abrogating, in part at least, the harsh rule of the common law on the subject of survival," [17] but its terms apply to "any case" in which a right of action has accrued prior to death, with certain limitation in tort cases. We have held that under the express provisions of the Survival Act, rights of action which have arisen prior to decedent's death survive for or against his legal

---

11. The responsible relative provision of the District of Columbia Hospitalization of the Mentally Ill Act § 7(g) 78 Stat. 949 (1964), D.C.Code § 21–356(g) Supp. IV 1964 replaced the responsible relative provision of the Act of August 9, 1939 § 9, 53 Stat. 1298, D.C.Code § 21–318 (1961), at issue in this case, and was in turn replaced by current § 21–586 (1967) which took effect January 1, 1966. The three versions differ only in phraseology. The Act of September 14, 1965 §§ 4, 8, 79 Stat. 779, 780 provides that liability incurred and proceedings commenced under the earlier statutes shall not be affected by their repeal.

12. 116 U.S.App.D.C. 68, 320 F.2d 790 (1963).

13. 123 U.S.App.D.C. 133, 357 F.2d 593 (1966).

14. *Ibid.*

15. D.C.Code 1961 § 12–101 Survival of rights of action
 On the death of any person in whose favor or against whom a right of action may have accrued for any cause prior to his death, said right of action shall survive in favor of or against the legal

representative of the deceased: Provided, however, that in tort actions the said right of action shall be limited to damages for physical injury except for pain and suffering resulting therefrom.

16. While the executor may maintain the action in order to recover he must show that decedent was in need of public assistance and that payment is being demanded from him by creditors who either supplied her with necessaries or advanced funds to decedent for the purchase of necessaries. In the present case, had Mrs. Wharton lived, her recovery for the period before the date of the judgment also would have been limited to those claims of creditors seeking payment from her for necessaries provided during the pendency of the suit. We think this is required because creditors who provide necessaries need not share with others in the distribution of the estate but may sue the responsible relative for reimbursement either by independent action or by intervening in the action of the indigent or her executor. See Richards v. Kaplan, 143 A.2d 511 (D.C.Mun.App.1958).

17. Soroka v. Beloff, 93 F.Supp. 642 (D.C.D.C.1950).

representative.[18] To deny appellant, Mrs. Wharton's legal representative, the right to maintain this action subverts the clear language of the Survival Act.

We refrain from consideration of the merits of the case because we would be benefited by the views of the DCCA in the first instance. We therefore remand the case to the DCCA for further proceedings consistent with this opinion.

18. Hudson v. Lazarus, 95 U.S.App.D.C. 16, 217 F.2d 344 (1954).