160 N.J. Super. 591 (1978)
390 A.2d 699
SOLOMON LEVINE AND MARILYN E. LEVINE, AS GUARDIANS AD LITEM FOR MAXWELL LEVINE, A MINOR, PLAINTIFFS-APPELLANTS,
v.
STATE OF NEW JERSEY DEPARTMENT OF INSTITUTIONS AND AGENCIES; COUNTY OF BERGEN; BERGEN COUNTY ADJUSTER'S OFFICE AND THE NORTH JERSEY TRAINING SCHOOL, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted June 12, 1978.
Decided July 3, 1978.
*592 Before Judges ALLCORN, MORGAN and HORN.
*593 Mr. Michael J. Mella, P.A., attorney for appellants.
Mr. John J. Degnan, Attorney General, attorney for respondents (William F. Hyland, former Attorney General; Stephen Skillman, Assistant Attorney General, of counsel; Mark A. Geannette, Deputy Attorney General and Joseph T. Maloney, Deputy Attorney General, on the brief).
The opinion of the court was delivered by ALLCORN, P.J.A.D.
Plaintiffs' ward is a mentally retarded child who now is and for several years past has been institutionalized at the North Jersey Training School at Totowa, a state institution for the care and maintenance of mentally retarded persons. According to the Director of Pediatrics at Totowa who examined him at the time of his admission, the child "is severely brain-damaged" and "will always be a permanent crib case who will need complete care." The classification committee characterized his condition as profound mental retardation, with an estimated I.Q. of one (1). It is uncontroverted that the child is neither educable nor trainable.
When plaintiffs' ward was admitted to Totowa the appropriate public agency computed the portion of the cost of his care and maintenance chargeable to plaintiff-father according to the schedules established by the Department of Institutions and Agencies. These schedules are based upon the financial ability of the patient or responsible relatives to pay part or all of the per capita cost for such custodial care and maintenance. Based on that formulation an order was entered on April 4, 1974, by the Bergen County Court, requiring plaintiff Solomon Levine to make reimbursement at the rate of $230 a month. The present action was commenced to compel defendants "to provide a total education to Maxwell Levine without cost to plaintiffs" and seeks to relieve plaintiffs "from any and all liability claimed to be owing * * * for previous services rendered for the education of" their child. Reportedly, no payments whatever have *594 been made on account of said obligation, nor has any application been made by plaintiffs to the Bergen County Court for reduction or for relief from the monthly reimbursement heretofore fixed.
It is apparent from the complaint that plaintiffs' thesis equates the entire scope of the custodial care and maintenance provided to their child at Totowa with educational services and concludes that, inasmuch as he is entitled to a thorough and efficient education by the State, without direct charge therefor, neither the child nor the parents may be assessed and compelled to pay for such "educational services." The very statement of the proposition reveals its fallacious nature. Custodial care and maintenance of a child in an institution such as Totowa for a full 24 hours each day consists of considerably more in the way of services than administering to educational needs. The characterization by plaintiffs of the whole of their child's general 24 hour a day custodial care and maintenance as "educational services," at best is a perversion and utterly specious. We reject the contention out of hand.
It should be here noted in passing that, according to the supplemental memorandum of defendants, the State does in fact deduct from the per capita cost of general care and maintenance at Totowa, the cost of supplying educational services. Thus, no part of the cost of such services is passed on to or paid by the child or his father.
We perceive nothing constitutionally offensive or otherwise improper in providing for the imposition against a patient or his responsible relatives of all or part of the per capita cost to the State of the custodial care and maintenance of the patient at a facility such as Totowa, particularly where, as here, the imposition is levied according to the ability to pay, N.J.S.A. 30:4-66. Neither do we discern any such infirmity in the formulae or schedules prescribed for determining the portion of the per capita cost to be assessed against and paid by the patient or his responsible relatives, N.J.S.A. 30:4-60, 78. Kough v. Hoehler, 413 *595 Ill. 409, 109 N.E.2d 177 (Sup. Ct. 1952); Matter of Levy, 38 N.Y.2d 653, 382 N.Y.S.2d 13, 345 N.E.2d 556 (1976); Beach v. Government of Dist. of Columbia, 116 U.S. App. D.C. 68, 320 F.2d 790 (D.C. Cir.1963). As so aptly stated in Beach:
In State v. Bateman, 110 Kan. 546, 204 P. 682, 683 (1922), it is said such a statute "merely recognizes the imperfect moral obligation, and makes of it a legal one." And see In re Idleman's Commitment, 146 Or. 13, 27 P.2d 305 (1933); Commonwealth v. Zommick, 362 Pa. 299, 66 A.2d 237 (1949). In relying upon these decisions, illustrative of rather widespread approval of comparable state legislation, we do not suggest any derogation of public responsibility for these unfortunates. St. Elizabeths itself is ample evidence of the assumption of such responsibility. But when the law turns also to the father for help, if he is able to give it, when the estate of the incompetent is insufficient, it does so only to supplement the public responsibility. Placing a secondary obligation upon the father finds its validity in the reasonableness of attaching legal significance to the natural bonds of consanguinity. It is not unreasonable, it is not a denial of due process, for the law to attach an enforceable obligation to the moral obligation which exists in the usual family relationship of father and daughter. Recognition by statute of this obligation is not at odds with recognition that the public in many cases is called upon to supply total support for such individuals, whose faculties or estates are unable to do so.
The magnitude of the liability is determined according to the father's ability, and this must be ascertained upon consideration of all the circumstances of his life, including his other obligations, so as not to cause undue hardship. As thus construed and applied to a father we think the statute is not violative of due process of law. [116 U.S. App. D.C. at 71, 320 F.2d at 793]
Our attention has been directed to the recent decision of Guempel v. State, 159 N.J. Super. 166 (Law Div. 1978). That case holds, in part, that in light of the educational services furnished by the State without charge to noncustodial retarded children at day care centers, at an annual per capita expense to the State of $5,500, the institutionalized child or his responsible relative is entitled to an equivalent credit against the child's per capita cost of general care and maintenance, as a matter of equal protection. Although this *596 issue was not raised or argued below, we requested counsel to address it in supplementary letter memoranda.
In our view, this holding in Guempel is not sound, and is hereby disapproved. Initially, there are sufficient significant differences and distinctions between the retarded child who requires institutionalization and the retarded child whose well-being does not require custodial care, to warrant their separate classification and to justify different treatment. In the case of the child requiring institutionalization, the State acts in the place of the parents in supplying all the needs of the child, including food, clothing, shelter and all other physical care and necessities, as well as protection and emotional support, 24 hours of every day, 365 days a year. The parents of the noninstitutionalized child, on the other hand, are themselves providing all of such needs to the child, with the exception of the educational services supplied by the day care center. These circumstances, coupled with the greater cost to the State consequent upon the maintenance of a child in an institution, constitute ample material and substantial distinctions reasonably related to the subject matter of the policy considerations to be served to justify the difference in treatment of the two classes. Matter of Rankin, 30 Or. App. 239, 566 P.2d 1209 (Ct. App. 1977); see Washington National Ins. Co. v. Board of Review, 1 N.J. 545 (1949).
Indeed, where the educational services provided at the day care centers are the same or essentially similar to those supplied to the institutionalized child  and there is nothing to indicate the contrary  we cannot conceive that there is any violation of equal protection rights. Both classes are supplied essentially the same services; both without charge by the State for those services. Both are receiving the same treatment without discrimination; neither has legitimate complaint.
Lastly, we perceive no genuine issue as to any of the material facts in this matter, and we are satisfied that defendants were entitled to judgment as a matter of law. *597 The entry of summary judgment in favor of the defendants against the plaintiffs was eminently proper. R. 4:46-2.
Affirmed.